J-S53012-14

2014 PA Super 197

| PHH MORTGAGE CORPORATION | : | IN THE SUPERIOR COURT OF |
|---|---|---|

PHH MORTGAGE CORPORATION
2001 BISHOP'S GATE BLVD.
MOUNT LAUREL, NJ 08054,

   Appellee

   v.

RICHARD H. POWELL
RACHEL M. POWELL
326 HOSACK ROAD
JACKSON CENTER, PA 16133-1428,

   Appellants

: IN THE SUPERIOR COURT OF
:   PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:
:
:
:
:
: No. 1899 WDA 2013

Appeal from the Order November 4, 2013,
Court of Common Pleas, Mercer County,
Civil Division at No. 2010-137

BEFORE:  DONOHUE, OLSON and PLATT*, JJ.

OPINION BY DONOHUE, J.:     **FILED SEPTEMBER 10, 2014**

Appellants, Richard H. Powell and Rachel M. Powell (together, the "Powells"), appeal *pro se* from the trial court's grant of summary judgment in favor of Appellee, PHH Mortgage Corporation ("PHH"), in this *in rem* mortgage foreclosure action.  The Powells contend that they never signed a mortgage note, but if they did sign it, PHH does not have the right to enforce it.  For the reasons that follow, we affirm the trial court's order in favor of PHH.

On January 12, 2010, PHH filed a mortgage foreclosure action against the Powells.  PHH alleged that on September 28, 2007, the Powells executed a purchase money mortgage ("the Mortgage") for $162,500, to Butler ARMCO

*Retired Senior Judge assigned to the Superior Court.

Employees Credit Union ("ARMCO") to purchase the property at 326 Hosack Road in Jackson Center, Pennsylvania. Amended Complaint, 8/16/2010, at ¶ 3. PHH further alleged that the Powells executed a promissory note ("the Note") for the same amount in favor of ARMCO. *Id.* On September 28, 2007, the sellers transferred the deed to the property to the Powells, and on October 1, 2007, the deed and the Mortgage were recorded in the Office of the Recorder of Deeds of Mercer County. *Id.* On November 13, 2007, an assignment of the Mortgage to PHH ("the Assignment") was also recorded. *Id.*

According to PHH, the Powells defaulted on the payments under the Note in May 2009. *Id.* at § 8. The Powells filed preliminary objections to PHH's initial complaint, and on September 16, 2010, PHH filed an amended complaint. Attached to the amended complaint as exhibits are the Mortgage, the Note, and the Assignment. *Id.* at § 3 (Exhibits A, B, and C). Attached to the Note is an allonge[1] dated October 4, 2007 ("the Allonge"), in which a representative of the original lender (Randall W. Cypher of ARMCO) indorsed the Note payable to the order of PHH. *Id*. at §§ 3, 4 (Exhibit B). On January 5, 2011, the trial court overruled the Powells' preliminary objections to the Amended Complaint, and on January 25, 2011, the trial court denied the

---

[1] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." BLACK'S LAW DICTIONARY 83 (8th ed. 2004).

Powells' motion for reconsideration of its decision. On May 20, 2011, the Powells filed an answer and new matter, and on June 10, 2011, PHH filed a reply to the new matter.

On January 12, 2012, PHH filed a motion for summary judgment, which the trial court denied by order dated March 5, 2012. After taking discovery, on June 13, 2012, PHH filed its second motion for summary judgment, to which the Powells filed an opposition and brief with supporting documents and affidavits. After oral argument, on November 4, 2013, the trial court granted PHH's second motion for summary judgment, entering an *in rem* judgment in the amount of $223,536.22 plus interest from June 16, 2013 and other costs and charges. On November 18, 2014, the trial court denied the Powells' motion for reconsideration.

On December 3, 2013, the Powells filed a notice of appeal, and on December 10, 2013, the trial court ordered the Powells to file a concise statement of errors to be presented on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On December 30, 2013, the Powells filed a Rule 1925(b) statement listing 40 issues. The trial court filed a short written opinion pursuant to Rule 1925(a) on January 8, 2014. The Powells filed their appellate brief with this Court on April 21, 2014, and PHH filed its appellate brief on July 3, 2014. On May 2, 2014, PHH filed a motion to strike various affidavits attached to the Powells' appellate brief, and on May 6, 2014, PHH filed a motion to quash this appeal on the grounds that the

Powells' Rule 1925(b) statement did not comply with our appellate rules and that the Powells had failed to attach a copy of the trial court's Rule 1925(a) opinion to their appellate brief. This Court denied both motions without prejudice to PHH's right to raise the issues again with the merits panel.

In its subsequently filed appellate brief, PHH again raises the issues in their motions to quash and strike, and we thus address them now at the outset. First, PHH's motion to strike is granted. The Powells have attached to their appellate brief the affidavits of five affiants who purport to provide information relating to the oral argument on PHH's second motion for summary judgment, and one of the affidavits includes a rough transcript of the affiant's observation of that proceeding. Rule 1921 of our appellate rules describes the composition of the certified record on appeal, and this Court may consider only the facts that have been duly certified in the record when deciding an appeal. *See* Pa.R.A.P. 1921 Note (citing ***Commonwealth v. Young***, 317 A.2d 258, 264 (Pa. 1974)). None of the attachments to the Powells' appellate brief appear in the certified record on appeal and therefore must be stricken. This Court has not considered the contents of these affidavits in deciding the present appeal.

Second, PHH's motion to quash the appeal is denied. The Powells' Rule 1925(b) statement fails in most respects to comply with the requirements of the Rule, including, most notably, that it is not concise. The Powells' Rule 1925(b) statement includes 40 separate paragraphs and is 10 pages in

length. As such, the Powells plainly made no attempt to winnow appropriate issues for appeal. On the other hand, Rule 1925(b)(4)(iv) provides that "the number of errors raised will not alone be grounds for finding waiver." Pa.R.A.P. 1925(b)(4)(iv). Moreover, in **Eiser v. Brown & Williamson Tobacco Corp.**, 938 A.2d 417 (Pa. 2007), our Supreme Court instructed that with respect to lengthy Rule 1925(b) statements, no violation is sufficient to find waiver of issues unless the trial court finds that the appellant acted in bad faith. **Id.** at 420-21. Here, the trial court reached no finding of bad faith, instead merely noting that the Powells' Rule 1925(b) statement reflects "a profound misunderstanding of the judicial process and the banking industry." Trial Court Opinion, 1/8/2014, at 1. In the absence of a finding of bad faith, we will not quash the Powells' appeal on this basis.

Finally, with respect to PHH's contention that the Powells' failure to attach a copy of the trial court's opinion violated Pa.R.A.P. 2111(b), we agree that the Powells violated this Rule. Because the trial court's opinion appears in the certified record on appeal, however, this violation of the Rule does not impair our ability to conduct appellate review. As a result, we decline to quash the appeal for this reason.

We turn then to the Powells' appellate brief. In addition to the violation of Pa.R.A.P. 2111(b) referenced above, the Powells' *pro se* appellate brief also violates, at a minimum, Rules 2116, 2117, 2118 and 2119. Rule 2116 requires the appellant to provide a "Statement of Questions Involved" in

accordance with specific technical requirements, including that the issues be stated in a concise manner, without details or argument. Pa.R.A.P. 2116. The Powells' appellate brief does not comply with these requirements, as their "Statement of Questions Involved" covers more than 15 pages and includes argument regarding the apparent correctness of their position on each of the 11 identified issues. Powells' Brief at 11-26.

Rule 2117 delineates the necessary contents of the "Statement of the Case," including, *inter alia*, a procedural history of the case and a closely condensed chronological statement of the facts necessary to decide the appeal. Ra.R.A.P. 2117. The "Statement of the Case" in the Powells' appellate brief consists of a single sentence, indicating only that this is a mortgage foreclosure action filed on January 12, 2010.[2] Powells' Brief at 26.

Rule 2118 requires the appellant to provide a "Summary of Argument," consisting of a "concise, but accurate, summary of the arguments presented in support of the issues in the statement of questions involved." Pa.R.A.P. 2118. The "Summary of Argument" in the Powells' appellate brief spans 20 pages, and contains argument on a variety of issues, some of which were not raised in the "Statement of Questions Involved." Powells' Brief at 26-46.

Finally, Rule 2119, entitled "Argument," directs the appellant to divide this portion of the brief into separate sections for each issue set forth in the

---

[2] The "Argument" portion of the Powells' appellate brief contains a heading entitled "Summary of the Evidence," but this section does not contain any of the basic information required by Rule 2117. **See** Powells' Brief at 50.

"Statement of Questions Presented," with distinctive headings for each such section. Pa.R.A.P. 2119. The "Argument" portion of the Powells' appellate brief contains subheadings and legal argument corresponding to just two of the 11 questions presented in the "Statement of Questions Involved" (specifically, the first and sixth listed issues). Powells' Brief at 46-57.

Given these multiple violations of our appellate rules, it would be within our province to quash the Powells' appeal. *See, e.g.*, *Commonwealth v. Maris*, 629 A.2d 1014, 1017 (Pa. Super. 1993) ("This Court possesses discretionary authority to quash, dismiss or deny allowance of appeal based upon the substantial defects of appellant's brief. Pa.R.A.P. 2101."). Because the "Argument" section of the Powells' appellate brief sufficiently identifies two issues and provides legal argument in support of them, however, we will address these two issues herein. The other nine issues set forth in the "Statement of Questions Involved" are waived, as the above-referenced failures to comply with our appellate rules preclude our ability to conduct meaningful appellate review of these issues.

For their first issue on appeal, the Powells contend that PHH has not presented sufficient evidence to establish the existence of a debt because they claim that they never signed any of the loan documents. PHH has presented a substantial quantum of evidence that the Powells in fact signed the Mortgage, the Note, and a variety of related documents to obtain a loan to purchase their house at a closing on September 28, 2007. This evidence

includes, but is not limited to, the documents themselves, the Powells' bank statements,[3] and deposition testimony from the attorney who handled the closing.[4] Nevertheless, both in verifications to pleadings and in depositions, the Powells, subject to penalties for perjury, have steadfastly denied that they ever signed any loan documents or ever borrowed any money from ARMCO. At his deposition, Richard Powell testified that he and his wife never borrowed any money and instead paid cash to purchase the house. Richard Powell Dep., 7/25/2012, at 7. He thereafter refused to answer any questions regarding the source of the $162,500 in cash to purchase the house.[5] *Id.*

We begin with our standard of review of an order granting a motion for summary judgment:

---

[3] The Powells' bank statements, obtained by subpoena, appear to show that the Powells withdrew $6,461, the amount of the down payment, on September 28, 2007 (the closing date). Second Motion for Summary Judgment, 6/12/2013, at ¶¶ 35-37 (Exhibits K and L). These bank statements thereafter appear to show that the Powells made monthly payments of $1,421.50 to the "Mortgage Service Center." *Id.* at ¶¶ 51-55 (Exhibits U and V).

[4] Andrea Parenti, Esq. ("Attorney Parenti"), testified that she handled the closing of the Powells' loan on September 28, 2007, and that the Powells signed all of the documents necessary to complete the loan process, including the Mortgage, the Note, a sales agreement, and a HUD-1 settlement statement form. Parenti Dep., 7/25/2012, at 5-15. The Powells objected to the authenticity of all of the exhibits used at Parenti's deposition. *Id.* at ¶¶ 7, 10.

[5] Rachel Powell refused to answer most of the questions posed to her at her deposition on constitutional grounds, insisting that she would not answer questions unless and until counsel for PHH provided her with assurances that her deposition answers would not be used against her in any future criminal proceedings. Rachel Powell Dep., 7/25/2012, at 4-10.

> 'Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary.' ***Petrina v. Allied Glove Corp.***, 46 A.3d 795, 797–798 (Pa. Super. 2012) (citations omitted). 'We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.' ***Barnes v. Keller***, 62 A.3d 382, 385 (Pa. Super. 2012), citing ***Erie Ins. Exch. v. Larrimore***, 987 A.2d 732, 736 (Pa. Super. 2009) (citation omitted). 'Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.' ***Id.***

***Sokolsky v. Eidelman***, 93 A.3d 858, 861 (Pa. Super. 2014).

With respect to the Powells' contention that they never signed the loan documents, we first address the authenticity of their signatures on the Note. The parties agree that the Note is a "negotiable instrument" governed by Pennsylvania's Uniform Commercial Code ("PUCC"). PHH's Brief at 18-19; Powells' Brief at 15. Section 3104(a) defines "negotiable instrument" as follows:

> **(a) Definition of 'negotiable instrument'.--**Except as provided in subsections (c) and (d), 'negotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> > (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
> >
> > (2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:

(i) an undertaking or power to give, maintain or protect collateral to secure payment;

(ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

(iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

13 Pa.C.S.A. § 3104(a).

In the present case, the Note satisfies this definition, as it is payable either to bearer or to order, is payable on demand, and does not require any other undertaking or instruction to be immediately payable. *See JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1266 (Pa. Super. 2013) (a note secured by a mortgage is a negotiable instrument); *In re Carmichael*, 448 B.R. 690, 694 (E.D. Pa. 2011) (collecting cases in other jurisdictions). With respect to the first requirement, PHH contends that the Note is payable to bearer because it not only has the attached Allonge indorsing it to PHH, but also "contains a blank endorsement by Sandra Padgett, Vice-President of [PHH]." PHH's Brief at 18. From our review of the Note in the certified record, we cannot locate the referenced blank indorsement, and thus we

question whether the Note is in fact payable to bearer.[6]  This difficulty makes no difference with respect to the Note's status as a negotiable instrument, however, since in the absence of a blank indorsement, the Note is payable to PHH (pursuant to the indorsement on the Allonge), and would thus be payable to order.  13 Pa.C.S.A. § 3109(b) (a promise is payable to order if it is indorsed as payable to an identified person).  Whether payable to bearer or to order, the Note (if signed) is a negotiable instrument and constitutes an unconditional promise by the Powells to pay a fixed amount of money with interest – originally payable to ARMCO, but now payable either to PHH or to bearer.

Now turning to the Powells' contention that the trial court erred in granting summary judgment because they never signed the Note, we agree that the first requisite of negotiability under the PUCC is that the instrument be signed by the maker or drawer, and that no person is liable on a negotiable instrument unless his or her signature appears thereon.  **Triffin v. Dillabough**, 670 A.2d 684, 689 (Pa. Super. 1996), *aff'd*, 716 A.2d 605 (Pa.

---

[6]  Pursuant to section 3205(a), a special indorsement is one made by the holder of an instrument that identifies a person to whom it makes the instrument payable.  13 Pa.C.S.A. § 3205(a).  Pursuant to section 3205(b), a blank indorsement is an indorsement made by the holder of a negotiable instrument that is not a special indorsement.  **Id.** § 3205(b).  When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.  **Murray**, 63 A.3d at 1266.

1998).  The validity of signatures on negotiable instruments is governed by

13 Pa.C.S.A. § 3308(a), which provides, in pertinent part, as follows:

> **(a) Proof of signatures.**--In an action with respect to an instrument,[7] the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

13 Pa.C.S.A. § 3308(a).

Pursuant to section 3308(a), a person denying the authenticity of a

signature on a negotiable instrument must do so by specific denial in the

pleadings.  If specifically denied, the party claiming validity has the burden of

proof to establish said validity, but a rebuttable presumption exists that the

signature is authentic and authorized.  *Id.*; *see generally Triffin*, 670 A.2d

at 689.  Section 1201(b)(8) of the PUCC defines "burden of establishing" as

"the burden of persuading the trier of fact that the existence of the fact is

more probable than its nonexistence."  13 Pa.C.S.A. § 1201(b)(8).  Section

1206 provides that whenever the PUCC creates a "presumption" with respect

to any fact, "the trier of fact must find the existence of the fact unless and

---

[7]  Pursuant to 13 Pa.C.S.A. § 3104(b), "instrument" means a "negotiable instrument."

until evidence is introduced that supports a finding of its nonexistence." *Id.*

§ 1206.

The Comment to section 3308 offers additional insight into the presumption of the validity of signatures on negotiable instruments:

> The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the defendant. The defendant is therefore required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence. The defendant's evidence need not be sufficient to require a directed verdict, but it must be enough to support the denial by permitting a finding in the defendant's favor. Until introduction of such evidence the presumption requires a finding for the plaintiff. Once such evidence is introduced the burden of establishing the signature by a preponderance of the total evidence is on the plaintiff.

*Id.* § 3308 Comment.

In the present case, in their answer to PHH's Amended Complaint, the Powells specifically denied that they ever signed the Note, thus properly raising the issue of the validity of the signatures.[8] In response to PHH's Second Motion for Summary Judgment, however, the Powells offered no evidence to support the denials in the pleadings. *See* Objection to [PHH's]

---

[8] In their answer and new matter, the Powells averred that "[i]f there [are] any mortgage[] documents filed in any Court House then the alleged documents were obtained through fraud for Powell categorically states that she has never executed … and/or delivered any said documents of indebtedness to anyone including [PHH]." Answer and New Matter, 10/24/2011, at ¶ 11 n.1.

Second Motion for Summary Judgment, 9/23/2013, at ¶ 38 ("The [Powells] have stated over (20) times in their pleadings that they have never had a legal indebtedness with either [ARMCO] or [PHH], and never admitted that they executed [or] delivered any legal promissory note and mortgage note and/or received any loan of money or benefit from [ARMCO] on or about September 28, 2007.").

Because of the rebuttable presumption created under section 3308(a), in response to PHH's second motion for summary judgment, the Powells had the burden of coming forward with evidence to rebut the presumption. **See** 13 Pa.C.S.A. § 3308 Comment; **Grandelli v. Methodist Hospital**, 777 A.2d 1138, 1143-44 (Pa. Super. 2001) (citing **McCarthy v. Dan LePore & Sons Co., Inc. et al.**, 724 A.2d 938, 940-41 (Pa. Super. 1998), *appeal denied*, 743 A.2d 921 (1999)). As the Comment to section 3308 makes clear, the Powells did not have to present sufficient evidence to compel a directed verdict, but did have to produce enough evidence to support the denials in their pleadings and permit a trier of fact to find in their favor on this issue at trial. Because the Powells did not meet their burden of coming forward with evidence, the presumption of validity requires a finding for PHH. 13 Pa.C.S.A. § 3308 Comment ("Until introduction of such evidence the presumption requires a finding for the plaintiff."). Accordingly, the trial court did not err on this basis in entering summary judgment in favor of PHH.

With respect to the authenticity of the Powells' signatures on the Mortgage recorded in the Office of the Recorder of Deeds of Mercer County, Rule 901(b)(7) of the Pennsylvania Rules of Evidence provides that publicly filed records may be authenticated in the same matter as other writings. Pa.R.E. 901(b)(7).[9]  Evidence may be properly authenticated by laying a foundation sufficient to show that it is a fair and accurate representation of what it is purported to depict, including by testimony from a witness who has knowledge of what the evidence is proclaimed to be.  **See, e.g.**, **Commonwealth v. Serge**, 837 A.2d 1255, 1261 (Pa. Super. 2003), *aff'd*, 896 A.2d 1170 (Pa. 2006), *cert. denied*, 549 U.S. 920 (2006).  A signature on a document may be authenticated by direct proof, including the testimony of a witness who saw the person sign the document.  **Commonwealth v. Brooks**, 508 A.2d 316, 318 (Pa. Super. 1986).

In this case, the deposition testimony of Attorney Parenti provided a sufficient basis to establish the authenticity of the Powells' signatures on the Mortgage.  She testified that she handled the loan closing on September 28, 2007, and that the Powells signed all of the necessary documents to complete the loan, including the Mortgage.  Parenti Dep., 7/25/2012, at 11. The Powells' identity as the signatories at this loan closing was further

---

[9]  Rule 902(4) further provides that copies of public records are self-authenticating if certified by the records custodian or another person so authorized.  Pa.R.E. 902(4).  Here, however, PHH did not provide such a certification for the Mortgage.

supported by Attorney Parenti's testimony that she made copies of the Powells' driver's licenses at the closing, *id.* at 13, and the license numbers on these copies match the license numbers on copies of the Powells' driver's licenses obtained during discovery. Second Motion for Summary Judgment, 6/12/2013, at ¶¶ 23-28 (Exhibits E, F, and G); Richard Powell Dep., 7/25/2012, at 8.

In response to this evidence as set forth in PHH's Second Motion for Summary Judgment, the Powells' could not rely on the denials in their pleadings and instead had the obligation to present evidence controverting Attorney Parenti's testimony sufficient to create a genuine issue of material fact regarding the authenticity of their signatures on the Mortgage. They did not do so and as such, the trial court did not err in refusing to grant summary judgment on this basis.

The Powells' second issue on appeal is essentially the mirror opposite of their first issue. For their second issue on appeal, the Powells appear to concede that they did sign the loan documents to borrow money to purchase their house, but contend that PHH does not have possession of the original Note and thus lacks the authority to enforce it. Powell's Brief at 54 ("The only real issue before this Court is [whether PHH] is the real party of interest … and is the owner of the promissory and mortgage note with an attached allonge allowing [PHH] to foreclose."). The Powells insist that the document in PHH's possession cannot be the original Note because they have presented

evidence that the original Note must instead be in the possession of Fannie Mae. PHH, on the other hand, contends that the certified record establishes that it holds the original Note and is therefore entitled to enforce it against the Powells. PHH's Brief at 19.

This Court has held that the mortgagee is the real party in interest in a foreclosure action. *Wells Fargo Bank, N.A. v. Lupori*, 8 A.3d 919, 922 (Pa. Super. 2010) (quoting *US Bank N.A. v. Mallory*, 982 A.2d 986, 994 (Pa. Super. 2009)). Section 3301 of the PUCC provides that a holder of a negotiable instrument is a "person entitled to enforce" it. 13 Pa.C.S.A. § 3301(1). Section 3302 defines a "holder in due course" of a negotiable instrument as the holder of an instrument if "the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity;" and the holder took the instrument for value and in good faith. *Id.* § 3302(a). Finally, Section 1201 defines a "holder," in relevant part, as "the person in possession of a negotiable instrument that is payable either to the bearer or to an identified person that is the person in possession." *Id.* § 1201(b)(21)(i).

The only issue here with respect to PHH's status as a holder in due course is whether it has possession of the original Note and Allonge. In *Murray*, this Court reversed a trial court's grant of summary judgment in a mortgage foreclosure action after concluding that the plaintiff mortgagee had

not demonstrated that it was the holder of the original mortgage note as a matter of law. We did so for three reasons. First, prior to the grant of summary judgment, the plaintiff mortgagor had not included the allonge with the note, including a failure to include it as an attachment to the complaint. *Murray*, 63 A.3d at 1266-67. Second, the plaintiff mortgagee did not produce the purported original note and allonge for the trial court's inspection. *Id.* at 1267. Third, while the plaintiff mortgagee did produce the note and allonge to the defendant mortgagor for inspection, after said inspection, the defendant mortgagor insisted that what had been given to him was only a copy of the note and no allonge was attached. *Id.* For these reasons, in *Murray* we concluded that whether or not the plaintiff mortgagee possessed the original note and allonge came down to a battle of competing testimonial affidavits, which provide no basis for the entry of summary judgment. *Id.* ("Testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury.") (quoting *Rosenberry v. Evans*, 48 A.3d 1255, 1260 (Pa. Super. 2012)); *see also Borough of Nanty–Glo v. Amer. Surety Co. of N.Y.*, 163 A. 523, 524 (Pa. 1932).

Based upon our review of the certified record, we find the present case to be factually distinguishable from *Murray*. Unlike in *Murray*, here, PHH attached the Note and Allonge together as a single exhibit to all of its filings

with the trial court, including to the complaint, the amended complaint, and both motions for summary judgment. In addition, PHH represented in its second motion for summary judgment that it presented the original Note and Allonge to the trial court for its inspection on November 26, 2012, and also handed it to the Powells to permit them to inspect it. Second Motion for Summary Judgment, 6/17/2013, at ¶ 65. In response, the Powells did not deny that counsel for PHH presented a note and allonge both to the trial court and to them for inspection. To the contrary, the Powells insisted that counsel for PHH "st[ood] up in open court and waive[d] what they alleged to be the original note as if it was the American flag." Objection to [PHH's] Second Motion for Summary Judgment, 9/23/2013, at ¶ 91. The Powells also insist that counsel's intent was to "trick" both the trial court and them into thinking that the documents produced were originals. *Id.* at ¶ 46.

Most importantly, unlike in *Murray*, in this case, the Powells' contention that PHH does not possess the original Note and Allonge is not based upon any lack of opportunity for visual inspection of the physical characteristics of the documents in question. Instead, the Powells' claim that PHH does not possess the original Note and Allonge is based solely on their insistence that the documents in PHH's possession *cannot* be the originals because they produced evidence showing that Fannie Mae possesses the originals. *Id.* at ¶¶ 100-101. Specifically, the Powells attached to their response to PHH's second motion for summary judgment an affidavit from

- 19 -

Mary Gutowski ("Gutowski"), in which she represents that she has expertise in searching for, obtaining, and understanding business and corporate records. *Id.* at Exhibit D-6, ¶ 1. According to Gutowski, two documents (one obtained from the office of Congressman Mike Kelly and another from a search of a Fannie Mae database) describe Fannie Mae as the "investor" and "owner" of the Powells' loan. *Id.* at Exhibit D-6, ¶ 25. Gutowski concludes that these documents call into question PHH's "claim of ownership" of the Powells' Note. *Id.*

PHH, however, does not claim to be the "owner" of the Note, but rather avers that it is a "person entitled to enforce" the Note because it is the holder in due course based upon its possession of the original Note and Allonge. Ownership of the Note is irrelevant to the determination of whether PHH is a "person entitled to enforce" the Note, as the Comment to section 3203 of the PUCC makes clear:

> The right to enforce an instrument and ownership of the instrument are two different concepts. A thief who steals a check payable to bearer becomes the holder of the check and a person entitled to enforce it, but does not become the owner of the check. … Ownership rights in instruments may be determined by principles of the law of property, independent of Article 3, which do not depend upon whether the instrument was transferred under Section 3-203. Moreover, a person who has an ownership right in an instrument might not be a person entitled to enforce the instrument. … Although [a] document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the

> instrument until Y obtains possession of the instrument.

13 Pa.C.S.A. § 3203 Comment.

In its Second Motion for Summary Judgment, including its affidavits and other exhibits (*e.g.*, the Note, Allonge, Mortgage, and Assignment), PHH has established as a matter of law that it is a holder in due course of the Powells' Note and thus is "entitled to enforce" it pursuant to section 3301 of the PUCC. Evidence that some other entity may be the "owner" or an "investor" in the Note is not relevant to this determination, as the entity with the right to enforce the Note may well not be the entity entitled to receive the economic benefits from payments received thereon. The Powells have produced no evidence that creates a genuine issue of material fact with respect to PHH's claim of entitlement to enforce the Note, including no evidence that Fannie Mae (rather than PHH) has possession of the original Note. Accordingly, no basis exists in the certified record on appeal to conclude that the trial court erred in granting summary judgment in favor of PHH.

Order granting summary judgment is affirmed. Motion to Quash Appeal is denied. Motion to Strike Affidavits and Alleged Transcript Attached to Appellants' Brief is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/2014