J-A19020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WELLS FARGO BANK, N.A., S/B/M TO WELLS FARGO HOME MORTGAGE, INC., F/K/A NORTHWEST MORTGAGE, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PHYLLIS R. GILROY | |
| Appellant | No. 1216 WDA 2014 |

Appeal from the Order Entered July 17, 2014
In the Court of Common Pleas of Crawford County
Civil Division at No(s): AD 2008-1903
EX-2013-203

BEFORE: BENDER, P.J.E., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                       **FILED JULY 22, 2015**

Phyllis Gilroy appeals from an order denying her petition to set aside a sheriff's sale in this mortgage foreclosure action. We affirm.

The record reveals the following: on December 20, 1996, Gilroy executed a promissory note in favor of Norwest Mortgage, Inc. ("Norwest") in the principal amount of $59,900.00. The note was secured by a purchase money mortgage on a residence situated on about one acre of land in Crawford County. Norwest recorded the mortgage in the Crawford County Recorder of Deeds. Thereafter, Norwest changed its name to Wells Fargo Home Mortgage, Inc., which then merged into Wells Fargo Bank, N.A.[1]

_____

[1] We will refer to the mortgagee as "Wells Fargo".

The first page of the mortgage includes a notice providing that: "THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT." The mortgage includes a Veterans Affairs ("VA") Guaranteed Loan and Assumption Policy Rider which was executed by Gilroy and recorded with the Recorder of Deeds. The rider provides that "*if* the indebtedness secured hereby is guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender." [Emphasis added] Similarly, with respect to the guaranty of the loan by the VA, the rider provides:

> Should the Department of Veterans Affairs fail or refuse to issue the guaranty in the full amount within 60 days from the date that this loan would normally become eligible for such guaranty, committed upon by the Department of Veterans Affairs under the provision of Title 38 of the U.S. Code, the Mortgagee may declare the indebtedness hereby secured at once due and payable and [proceed to] foreclosure immediately.

The Rider defines an "assumption" as "an authorized transfer … of the property."

In June 2008, Gilroy defaulted on her obligations under the note and mortgage. Wells Fargo sent Gilroy notice of intention to foreclose pursuant to Act 91, but Gilroy failed to cure her default.

On November 3, 2008, Wells Fargo commenced a mortgage foreclosure action against Gilroy via complaint with a notice to defend. Paragraph 1 of the complaint averred that the plaintiff was "Wells Fargo Bank, N.A., s/b/m to Wells Fargo Home Mortgage, Inc. f/k/a Norwest Mortgage, Inc." Paragraph 6 of the complaint set forth an itemized list of the liquidated amounts that Wells Fargo claimed were due under the mortgage. Included in this list was the amount of $1,250.00 for attorneys' fees. Wells Fargo averred that the total amount due under the mortgage, including attorney fees, was the liquidated sum of $54,002.49. Paragraph 7 of the complaint averred that the attorneys' fees requested were in conformity with the mortgage and Pennsylvania law. Paragraph 9 of the Complaint averred that any notices required under Act 6 of 1974 ("Act 6"), Notice of Homeowner's Emergency [Mortgage] Assistance Program pursuant to Act 91 of 1983 ("Act 91"), as amended in 1998, and/or Notice of Default as required by the mortgage, as applicable, had been sent to Gilroy. Paragraph 10 of the complaint averred that Act 6 did not apply to the foreclosure action because the original mortgage amount exceeded the dollar amount provided in the statute.

In its prayer for relief, Wells Fargo demanded judgment against Gilroy in the amount of $54,002.49. On November 12, 2008, Wells Fargo served the complaint on Gilroy through the sheriff. On December 30, 2008, Wells Fargo filed a praecipe for entry of default judgment against Gilroy due to her failure to answer the complaint.

Gilroy filed for bankruptcy, but her bankruptcy case was dismissed. Wells Fargo began execution proceedings, and on February 7, 2014, the property was sold at sheriff's sale. On February 27, 2014, over five years after entry of default judgment, Gilroy filed a petition "to set aside the sheriff's sale." On July 17, 2014, the trial court denied Gilroy's petition. Gilroy filed a timely notice of appeal, and both Gilroy and the trial court complied with Pa.R.A.P. 1925.

Gilroy raises four issues in this appeal:

> 1. Do VA foreclosure laws and regulations trump state laws on the same?
>
> 2. Does the record negate the presumption that Wells Fargo was entitled to enforce the Note?
>
> 3. Does the failure to provide Ms. Gilroy the required VA notice constitute a fatal defect?
>
> 4. Can only an Article V court determine an unliquidated amount and direct it to be included into a judgment (i.e., does a Prothonotary lack authority to determine and add an unliquidated amount to a judgment)?

At the outset, we observe that Gilroy should have filed her petition in the trial court as a "petition to strike the judgment" instead of a "petition to set aside the sheriff's sale." We raise this point because we apply a different standard of review to petitions to strike than to petitions to set aside.

A petition to set aside the sheriff's sale is a request by an interested party to set aside a sheriff's sale "upon proper cause shown" where relief is

"just and proper under the circumstances." Pa.R.Civ.P. 3132. This petition seeks equitable relief, *Bornman v. Gordon*, 527 A.2d 109, 111 (Pa.Super.1987), and we review an order deciding this petition for abuse of discretion. *Blue Ball Nat. Bank v. Balmer*, 810 A.2d 164, 167 (Pa.Super.2002).

A petition to strike a judgment, on the other hand, alleges that there is a fatal defect or irregularity on the face of the record. *EMC Mortgage, LLC v. Biddle*, 114 A.3d 1057, 1063 (Pa.Super.2015). If the defect is jurisdictional in nature, the judgment is void and may be stricken at any time. *M & P Management, L.P. v. Williams*, 937 A.2d 398, 400 (Pa.2007). If the defect is non-jurisdictional, the judgment is voidable, and "the application to strike off must be made within a reasonable time, or the irregularity will be held waived." *Id*. A petition to strike does not involve the discretion of the court; thus, we review an order denying a petition to strike to determine whether the record is sufficient to sustain the judgment. *Wells Fargo Bank, N.A. v. Lupori*, 8 A.3d 919, 920 (Pa.Super.2010). We will not consider matters outside the record, and if the record is self-sustaining, the judgment will not be stricken. *Id*.

In both the trial court and this Court, Gilroy claims that there are fatal defects on the face of the record. Because these claims are tantamount to a motion to strike the judgment, the standard of review governing motions to strike applies to this appeal.

We address Gilroy's first and third arguments together, because they involve the same subject. Gilroy contends that VA foreclosure law "trumps" Pennsylvania law, and therefore Wells Fargo had the duty to send Gilroy a pre-foreclosure notice that complied with VA foreclosure laws and regulations. Wells Fargo's failure to send Gilroy a pre-foreclosure notice that satisfied VA laws and regulations, Gilroy argues, is a "fatal defect" in the record. Brief For Appellant, p. 13; *see also id.*, p. 10 (absence of VA notice is "fatal irregularity").

Gilroy failed to raise this issue in the trial court. The question thus becomes whether Wells Fargo's alleged failure to send a pre-foreclosure VA notice is a jurisdictional (and thus non-waivable) defect or a non-jurisdictional (and thus waivable) defect. **M & P Management, L.P.**, 937 A.2d at 400. While there is no decision directly on point, several factors persuade us that this alleged defect is non-jurisdictional, and thus waivable. First, we held in **United National Bank of Little Rock v. Cobbs**, 567 A.2d 719 (Pa.Super.1989), that a mortgagor "may raise the Bank's failure to comply with the servicing provisions of the VA Lenders Handbook as an *equitable* defense in the Bank's mortgage foreclosure action." **Id**. at 723 (emphasis added). "Equitable" defenses can and often do raise important concerns, but they are not jurisdictional in nature. Therefore, they can be waived. **See, e.g., In Re Estate of Trowbridge**, 920 A.2d 901, 906 (Pa.Cmwlth.2007) (defendant waived equitable defense of laches). **Cobbs'**

use of "equitable" suggests that VA regulations are waivable. Second, we can locate no decision, state or federal, that the requirement of a pre-foreclosure VA notice is jurisdictional and non-waivable. To the contrary, one recent decision holds that a mortgagor can waive his rights under VA mortgage foreclosure regulations. *See Bulmer v. MidFirst Bank, FSA*, 59 F.Supp.3d 271, 280-281 (D.Mass.2014) (mortgagor waived condition to mortgage assignee exercising its power of sale that it comply with VA regulations requiring holder of loan guaranteed or insured by Secretary to maintain loan servicing program and make reasonable effort to establish realistic and mutually satisfactory arrangement for curing default, where mortgagor accepted forbearance agreement from assignee instead of asserting his rights under VA regulations). Third, we find guidance from a recent decision by our Supreme Court that the failure to send a pre-foreclosure notice under the Homeowner's Emergency Mortgage Act (Act 91), 35 P.S. §§ 1680.401c *et seq.*, is a mere procedural, and thus waivable, defect. *See Beneficial Consumer Discount Co. v. Vukman*, 77 A.3d 547 (Pa.2013). *Vukman* held that a cause of action for mortgage foreclosure

> [does not] include a mortgagee's compliance with Act 91's requirements. A cause of action is 'a factual situation that entitles one person to obtain a remedy in court from another person.' Black's Law Dictionary 235 (8th ed. 2004). In foreclosure, this factual situation includes a mortgagor's default on a duly executed mortgage. *See* Pa.R.C.P. 1147(a) (itemizing factual averments required in mortgage foreclosure complaint). The cause of action does not include the procedural requirements of acting on that

cause. *Appellee's overarching assertion that Act 91 imposes jurisdictional prerequisites on mortgage foreclosure actions is unsupportable.*

Turning to the definitions of 'procedural law' and 'procedure,' the Act 91 notice requirements appear to fit comfortably in the procedural realm as they set forth the steps a mortgagee with a cause of action must take prior to filing for foreclosure. *See* Black's Law Dictionary 1241 (8th ed. 2004) (Procedural law: 'The rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves.' Procedure: '1. A specific method or course of action. 2. The judicial rule or manner for carrying on a civil lawsuit or criminal prosecution.'). Contrary to appellee's argument, the Act 91 notice requirements certainly do not sound in jurisdiction as they do not affect the classification of the case as a mortgage foreclosure action. ***See In re Melograne****,* [812 A.2d 1164,] 1167 [Pa.2002] (citation omitted) ('Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs.'). Moreover, *the lack of explicit language in Act 91 prescribing that such requirements are jurisdictional cautions against this Court treating them as such*.

***Id***. at 552-53 (emphasis added). We see no reason (nor does Gilroy provide any) for treating VA notices differently than our Supreme Court treats Act 91 notices in ***Vukman***.

In the absence of persuasive precedent that VA foreclosure regulations are non-waivable, we conclude that these regulations are procedural, non-jurisdictional requisites that mortgagors such as Gilroy can waive. Gilroy waived any protections available under VA foreclosure regulations by waiting

five years after entry of judgment before filing her petition to strike.  ***M & P Management, L.P.***, 937 A.2d at 400 (non-jurisdictional irregularities are waived if not raised within reasonable time).  In addition, Gilroy waived this issue by failing to raise it in her petition or supporting memoranda. Pa.R.A.P. 302(a) ("issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Even if Gilroy preserved this issue, the rider in Gilroy's mortgage provides that federal statutes and regulations only apply "*if* the indebtedness secured hereby is guaranteed or insured under Title 38 [of the] United States Code."  Nothing in the record indicates that the VA actually insured or guaranteed Gilroy's loan – and without any VA participation in the loan, we cannot see how Gilroy is entitled to a pre-foreclosure VA notice.[2]

_____

[2] In the trial court, and in the body of her brief, Gilroy contended that Wells Fargo failed to send her an Act 91 notice and a pre-foreclosure notice under Act 6 of 1974, 41 P.S. § 401 *et seq*. ("Act 6").  Although Gilroy neglected to raise these issues in her brief's Statement of Questions Presented, we exercise our discretion to overlook this omission and to review these issues on the merits.  ***PHH Mortgage Corp. v. Powell***, 100 A.3d 611, 615 (Pa.Super.2014) (appellant's failure to comply with appellate rules governing, *inter alia*, statement of questions involved did not preclude appellate review of issues identified in brief which appellant supported with legal argument).

Gilroy is not entitled to relief under Act 91, because the record reflects that Wells Fargo sent Gilroy an Act 91 notice over four months before filing a foreclosure action.  Wells Fargo's Answer To Petition To Set Aside Sheriff's Sale, exhibit R.

Nor does Act 6 protect Gilroy.  Act 6 provides:
*(Footnote Continued Next Page)*

In her second issue on appeal, Gilroy argues that Wells Fargo lacks standing to enforce the note because it failed to establish that Norwest, the original mortgagee, assigned the note to Wells Fargo. Pennsylvania courts view the issue of standing as non-jurisdictional and waivable. *In re: Condemnation of Urban Dev. Auth. of Pittsburgh*, 913 A.2d 178, 181 n. 6 (Pa.2006). Gilroy waived this issue by delaying five years after entry of

*(Footnote Continued)* ─────────

> Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

41 P.S. § 403(a). By its terms, Act 6 only applies to "residential mortgages." Under the current version of Act 6, a residential mortgage is defined as "an obligation to pay a sum of money in an original *bona fide* principal amount of the base figure or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units …" 41 P.S. § 101. Prior to September 8, 2008, the base figure was $50,000.00. As of September 8, 2008, the legislature increased the base figure to $217,873. Notwithstanding the 2008 amendment, courts have looked to the *bona fide* principal amount set at the time of the transaction, not at a subsequent date, for determining whether a residential mortgage comes under Act 6. *In re Harris−Pena*, 446 B.R. 178, 187 (Bankr.E.D.Pa.2009) (acknowledging 2008 amendment to Act 6, but applying pre−2008 $50,000.00 principal amount limit for loan that closed in 2001; under pre-2008 limit, lender was not required to send Act 6 notice to mortgagor). We find **Harris-Pena** persuasive. When Gilroy entered the mortgage in 1996, its principal amount of $59,900.00 exceeded $50,000.00, the limit then in effect. Thus, Wells Fargo was not required to send an Act 6 pre-foreclosure notice to Gilroy.

- 10 -

judgment before filing her petition to strike. ***M & P Management, L.P.***, 937 A.2d at 400.

Even if Gilroy had preserved this issue, it would not entitle her to relief. The Rules of Civil Procedure require a mortgage foreclosure complaint to state any assignments of the mortgage. Pa.R.Civ.P. 1147(a)(2). In this case, however, there was no assignment. The record establishes that Wells Fargo is the successor by merger to Wells Fargo Home Mortgage, Inc., which was formerly known as Norwest Mortgage, Inc., the original lender. Complaint, ¶ 1 (averring that plaintiff is "Wells Fargo Bank, N.A., s/b/m [successor by merger] to Wells Fargo Home Mortgage, Inc. f/k/a [formerly known as] Norwest Mortgage, Inc."). It is well-settled that the surviving corporation in a merger succeeds to all assets, liabilities and rights of action held by the merged corporation. ***Seven Springs Farm, Inc. v. Croker***, 748 A.2d 740, 746-47 (Pa.Super.2000) (after merger, surviving corporation succeeds to the assets and liabilities of merged corporations); ***CBS, Inc. v. Film Corp. of Am.***, 545 F. Supp. 1382, 1388 (E.D.Pa.1982) (applying Pennsylvania law) (corporation formed by merger of other corporations succeeds to all rights of action possessed by companies merged into the survivor corporation); ***see also Mullins v. Wells Fargo Bank, N.A.***, 2013 WL 5299181, *13 (E.D.Cal.2013) ("Wells Fargo simply succeeded to World Savings Bank, FSB's interest in plaintiff's loan," due to merger). Thus, Wells Fargo succeeded to Norwest's interests in the mortgage by operation of law.

No assignment was necessary. ***See Rice v. v. Wells Fargo Bank, N.A.***, 2014 WL 868785, *7 (D.Mass.2014) (Wells Fargo automatically acquired ownership at time of merger and "lack of any recorded assignment actually undermines plaintiff's claim to the extent that it suggests the mortgage was not transferred to anyone other than [Wells Fargo]"); ***Toromanova v. Wells Fargo Bank, N.A.***, 2013 WL 6225365, *3 (D.Nev.2013) ("Wells Fargo is not a 'stranger' to the note but rather a valid, legally noticed successor-in-interest"); ***Suser v. Wachovia Mortgage***, ***FSB***, 78 A.3d 1014, 1016 (N.J.A.D.2013) (rejecting plaintiff's argument regarding assignment of mortgage because "Wells Fargo's right to enforce the mortgage arises by operation of its ownership of the asset through mergers or acquisitions, not assignment").[3]

In her fourth argument on appeal, Gilroy contends that the judgment must be stricken because (1) the amount of attorney fees entered by the prothonotary ($1,250) was a flat fee; (2) the court alone has the authority to award attorney fees, not the prothonotary; and (3) the court can only award reasonable attorney fees instead of the flat fee demanded by counsel

---

[3] Gilroy also suggests that the VA is an indispensable party to this action because it guaranteed the loan secured by the mortgage. The mortgage rider expressly provides that the VA *may* guarantee the loan but that it is not required to do so. There are no facts of record indicating that the VA actually guaranteed the loan secured by the mortgage. Absent such facts, the record does not support the contention that the VA has any interest in this case, let alone that it is an indispensable party.

- 12 -

for Wells Fargo. Once again, this is a non-jurisdictional defect that Gilroy waived by failing to file a petition to strike until five years after entry of judgment.

Even if Gilroy preserved this issue, it is not a proper ground upon which to strike the judgment. "A judgment should only be stricken if the record reveals a defect on its face." **EMC Mortgage**, **supra**, 114 A.3d at 1063. The entire judgment need not be stricken when there is only an alleged error on the amount entered. **Id**. at 1064. The proper remedy in this circumstance is to modify the amount of the judgment. **Id**. In this case, no reason exists to modify the amount of the judgment, because paragraph 21 of the mortgage expressly permits collection of attorney fees upon default by the mortgagor, and the prothonotary entered judgment in the precise amount prayed for in the complaint.

Order affirmed. Motion for leave to submit supplemental authority denied as moot.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/22/2015