J-A09043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TOBY L. SPIGELMYER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CHARLES MAYNARD COLONY, DOROTHY I. COLONY, AND ERIC E. EMINHIZER, PARTNERS, T/D/B/A FERGUSON VALLEY HARDWOODS, CHARLES MAYNARD COLONY, T/D/B/A HAWKWING PARTNERSHIP AND DOBERMAN GROUP, INC. | |
| Appellees | No. 1602 MDA 2015 |

Appeal from the Order Entered April 28, 2015
in the Court of Common Pleas of Mifflin County
Civil Division at No.: CP-44-CV-581-2014

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JULY 26, 2016**

Appellant, Toby L. Spigelmyer, appeals from the trial court's order denying his motion for summary judgment and granting the motion for summary judgment filed by Appellees, Charles Maynard Colony *et al.*, in this quiet title action.  After review, we reverse the trial court's order and remand for entry of summary judgment in favor of Appellant.

We take the relevant facts and procedural history of this case from the trial court's April 22, 2015 opinion and our independent review of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

certified record. This action centers on a 348.12-acre unimproved tract of land located in Mifflin County, Pennsylvania (Property). On December 8, 1794, the Property was warranted to William Reiley. Robert A. Means acquired title to the Property on November 4, 1847. Mr. Means died in 1887, and in his will, he devised an undivided one-half interest in the Property to each of his sons, R. Howard Means a/k/a Robert H. Means, and Francis A. Means. Appellees are the assignees of the heirs of R. Howard Means a/k/a Robert H. Means and Francis A. Means.

Real estate taxes on the unseated[1] Property became delinquent, and the treasurer of Mifflin County offered it for sale on June 13, 1932. The

_____

[1] By way of background, this Court has explained with respect to unseated land:

> The distinction of seated and unseated land was part of Pennsylvania tax assessment law prior to 1961. Unseated land was unoccupied and unimproved whereas seated land contained permanent improvements as indicate a personal responsibility for taxes.

> \* \* \*

> The Act [of the 28th of March, 1806,] required persons who acquired unseated land to furnish a statement describing that land to the county commissioners, or the board for the assessment and revision of taxes, so that a proper tax assessment could be levied.

> \* \* \*

> . . . [S]eated lands are assessed in the name of the owners while unseated lands are assessed by survey or warrant numbers, regardless of the owners whose names if used at all are only for

*(Footnote Continued Next Page)*

published notice of sale identified William Reiley as the warrantee of the Property, and "R. H. Means" as owner of the Property, but did not identify Francis A. Means as co-owner.[2] (**See** Trial Court Opinion, 4/22/15, at 3, Exhibit A). It appears Francis A. Means was deceased at the time of the 1932 sale; his heirs at the time were his daughter, Bessie B. M. Reynolds, and his granddaughters, Elizabeth M. Reed, Sarah F. Reed, and Mary Kyle Reed. (**See** Appellees' Answer, 6/17/14, at unnumbered page 3). The Mifflin County Commissioners purchased the Property at the tax sale because no bidders reached the threshold price. The Property was not redeemed in the two-year redemption period that followed. On June 26, 1934, the Mifflin County Commissioners recorded a deed for the Property.

_(Footnote Continued)_  ───────────

the purpose of description. This statement of the law . . . highlights the necessity for informing the county commissioners of any changes to the real estate, because the commissioners, in assessing tax values to a particular warrant, are not concerned with names of the owners, only the property itself. Therefore, if the county commissioners have not been informed of [any changes to the real estate], the tax assessment is levied against the property as a whole.

**Herder Spring Hunting Club v. Keller**, 93 A.3d 465, 466, 468-69 (Pa. Super. 2014), _appeal granted_, 108 A.3d 1279 (Pa. 2015) (citations and footnote omitted).

[2] The trial court and the parties agree that the notice comported with applicable statutory law in effect at that time, which required that the notice identify the names of the warrantees or owners. (**See** Trial Court Opinion, 4/22/15, at 5-6, 12; Appellant's Brief, at 10, 14; Appellees' Brief, at 4, 10).

On January 1, 1949, title to the Property was transferred to the Mifflin County Tax Claim Bureau by operation of law.

Sixty-four years later, on February 28, 2013, the bureau held an auction and Appellant was the successful bidder at $220,000.00. He recorded the deed for the Property on August 19, 2013.

On May 1, 2014, Appellant filed this action to quiet title seeking a declaration that he acquired all of the right, title and interest in the Property. Appellees filed an answer on June 17, 2014, requesting a declaration that Appellant did not acquire any of the interest in the real estate formerly owned by Francis A. Means. After the parties filed cross-motions for summary judgment, the court issued a memorandum and order granting summary judgment in favor of Appellees. Appellant filed a motion for reconsideration, which the court denied on August 24, 2015. This timely appeal followed.[3]

Appellant raises three issues for this Court's review:

> 1. Whether the [trial] court committed an error of law by failing to hold that [Appellant], by virtue of a [d]eed from [the] County of Mifflin, had acquired all of the right, title and interest of the owners of the Reiley Warrant property at the time of the 1932 tax sale, when it was undisputed that the sale had been conducted in full compliance with the then-applicable statute governing the sale of unseated lands for delinquent taxes and

---

[3] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on October 2, 1015. *See* Pa.R.A.P. 1925(b). The trial court entered an opinion on October 20, 2015. *See* Pa.R.A.P. 1925(a).

existing Pennsylvania Supreme Court precedent mandates a holding that such compliance results in passage of complete title?

2. Whether the [trial] court committed an error of law and an abuse of discretion in affording the protection of the due process clause of the Fourteenth Amendment to the United States Constitution to the owners of a one-half (1/2) interest in the Reiley Warrant property at the time of a 1932 tax sale, based upon its application of certain decisions of the United States Supreme Court, dealing with notice requirements of the due process clause, absent any allegations or record evidence that the owners did not have actual notice of the sale or that their identities or whereabouts were known to or easily discoverable by the county treasurer?

3. Whether the [trial] court committed an error of law and an abuse of discretion by retroactively applying certain decisions of the United States Supreme Court, dealing with notice requirements of the due process clause of the Fourteenth Amendment to the United States Constitution, to a tax sale which occurred from eighteen (18) to seventy-four (74) years prior to the decisions, where such application does not further the purpose of the decisions, is unfairly prejudicial to [Appellant,] and will detrimentally affect the administration of justice?

(Appellant's Brief, at 4-5).

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary. We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

***PHH Mortgage Corp. v. Powell***, 100 A.3d 611, 616 (Pa. Super. 2014)

(citations and internal quotation marks omitted).

We begin by discussing Appellant's second and third issues, because they are dispositive of this appeal. In these issues, Appellant argues that the trial court erred in it its application of three United States Supreme Court decisions to the instant case, to invalidate the 1932 tax sale. (*See* Appellant's Brief, at 16-23).

Specifically, the trial court relied on *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983), and *Jones v. Flowers*, 547 U.S. 220 (2006), in reaching its conclusion that the 1932 tax sale was invalid with respect to Francis A. Means' one-half interest. (*See* Trial Ct. Op., 4/22/15, at 6-12). It determined that the sale violated the due process clause of the Fourteenth Amendment to the United States Constitution because notice of the sale was not provided to Francis A. Means. (*See* Trial Ct. Op. 10/20/15, at 3).

We first address Appellant's contention that the trial court erred in applying *Mullane*, *Mennonite Board*, and *Jones* retroactively where the tax sale predates these decisions. (*See* Appellant's Brief, at 11, 20). In *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993), the United States Supreme Court adopted a general rule with respect to retroactivity in both the civil and criminal contexts. Specifically, it held:

> [w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Id.* at 97 (articulating rule fairly reflecting position of majority of Justices in

***James B. Beam Distilling Co. v. Georgia***, 501 U.S. 529 (1991)).  Thus,

we conclude that retroactive application of the controlling interpretation of

due process requirements was appropriate in this case, regardless of the

timing of the tax sale.  ***See id.***  However, this does not end our inquiry;

Appellant also maintains that the trial court misapplied the holding of

***Mullane*** and its progeny in finding the notice inadequate.  (***See*** Appellant's

Brief, at 16-20).  After review, we agree.

The Due Process Clause of the Fourteenth Amendment provides that

no state shall "deprive any person of life, liberty, or property, without due

process of law."  U.S. Const. amend. XIV, § 1.  ***Mullane*** involved the

Supreme Court's evaluation of the adequacy of notice of judicial settlement

of accounts provided to beneficiaries of a common trust fund by the trustee.

The Court explained:

> An elementary and fundamental requirement of due
> process in any proceeding which is to be accorded finality is
> notice reasonably calculated, under all the circumstances, to
> apprise interested parties of the pendency of the action and
> afford them an opportunity to present their objections.  The
> notice must be of such nature as reasonably to convey the
> required information, and it must afford a reasonable time for
> those interested to make their appearance.  But if with due
> regard for the practicalities and peculiarities of the case these
> conditions are reasonably met the constitutional requirements
> are satisfied. . . .
>
> But when notice is a person's due, process which is a mere
> gesture is not due process.  The means employed must be such
> as one desirous of actually informing the absentee might
> reasonably adopt to accomplish it.  The reasonableness and

hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

\* \* \*

This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. **Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights**.

Those beneficiaries represented by appellant whose interests or whereabouts could not with due diligence be ascertained come clearly within this category. As to them the statutory notice [by publication] is sufficient. . . .

**Nor do we consider it unreasonable for the State to dispense with more certain notice to those beneficiaries whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee**. . . .

*Mullane*, *supra* at 314-15, 317 (holding published notice was not sufficient to inform beneficiaries of trust whose names and addresses were known, but that notice **was sufficient** as to those who were unknown) (citations and quotation marks omitted; emphases added).

In *Mennonite Board*, the Court interpreted Indiana's tax sale statute and addressed the issue of "whether notice by publication and posting provides a mortgagee of real property with adequate notice of a proceeding to sell the mortgaged property for nonpayment of taxes." *Mennonite*

*Board*, *supra* at 792.  Of significance was the fact that the mortgagee had a recorded security interest.  *See id.* at 798.  The Court determined:

>   Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale.  When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service.  But **unless the mortgagee is not reasonably identifiable**, constructive notice alone does not satisfy the mandate of *Mullane*.

*Id.* (citation and footnote omitted) (emphasis added).

Finally, in *Jones*, the Court considered whether, where notice of a tax sale is mailed to a property owner and returned undelivered, such that the government becomes aware that the attempt at notice had failed, due process requires it to take additional reasonable steps to provide notice before selling the owner's home in a tax sale.  *See Jones*, *supra* at 223, 227.  The Court noted that, after the state received the returned form indicating that the property owner had not received notice, it did nothing.  *See id.* at 234.  Based on these facts, the Court concluded "the State should have taken additional reasonable steps to notify [the property-owner], **if practicable to do so**."  *Id.* (emphasis added).  The Court also indicated that "if there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing."  *Id.*

Here, there is nothing in the record to indicate that county officials were aware of Francis A. Means' interest in the unseated Property at the

time of the 1932 tax sale, or that it was "reasonably possible or practicable to give more adequate warning" to his heirs. ***Mullane***, ***supra*** at 317. Appellees have not demonstrated that Francis A. Means or his heirs complied with their affirmative statutory duty to provide the county with notification of their interest in the Property so that a proper tax assessment could be levied. ***See Herder Spring Hunting Club***, ***supra*** at 466. They have not presented any evidence indicating that county officials knew the identities or whereabouts of Francis A. Mean or his heirs. (***See*** Appellees' Brief, at 3-15). Thus, the case at bar is distinguishable from the situations discussed in ***Mullane***, ***Mennonite Board***, and ***Jones***, where the relevant actors were aware of the identities of the affected individuals and failed to provide them with adequate notice. We therefore conclude that, in the instant case, "employment of an indirect and even a probably futile means of notification is all that the situation permit[ted] and create[d] no constitutional bar to a final decree foreclosing [Appellees'] rights." ***Mullane***, ***supra*** at 317 (citation omitted). Because we find that notice of the tax sale was not constitutionally infirm, we reverse the order of the trial court and direct entry of summary judgment in favor of Appellant.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/26/2016