J-S56019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GARY URYC | |
| Appellant | No. 535 MDA 2015 |

Appeal from the PCRA Order March 10, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0000051-2012
CP-36-CR-0005370-2010

BEFORE:  SHOGAN, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:          **FILED NOVEMBER 10, 2015**

Gary Uryc appeals *pro se* from an order dismissing his timely petition seeking relief under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

Uryc lived in Lancaster County with his wife, S.U., and their three biological daughters, the eldest of whom was M.U.  N.T. 168.[2]  Uryc touched M.U.'s vagina during her childhood and forced her to perform oral sex on him during her early teenage years.  N.T. 114-19.  In October 2009, when M.U. was 14, S.U. heard M.U. performing oral sex on Uryc in the living room

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] The transcript from Uryc's three-day trial consists of three volumes of consecutively numbered pages.

of their house.  N.T. 173-77.  Uryc's wife took M.U. upstairs, where M.U. tearfully confessed that she had been performing oral sex on Uryc for years.  N.T. 177.  Uryc's wife did not contact police at that point, because M.U. did not want her to make any report.  N.T. 178-79 (M.U. "just want[ed] to forget about it").

In June 2010, S.U. and her three daughters moved out of Uryc's house.  N.T. 181.  In August 2010, M.U. told her aunt Tina about Uryc's sexual assaults.  N.T. 181-82.  At that point, S.U. took M.U. to the police to file a complaint against Uryc.  N.T. 181-85.  Following his arrest, Uryc told police detectives that "I'm a fucked up person, I've done fucked up things," N.T. 279-80, but M.U. "was an honest girl and we should believe her."  N.T. 305; **see also** N.T. 282 (Uryc told detectives that "we had to believe [M.U.]. It's possible that this happened while I was drinking, anything is possible. [Uryc] then said, you guys have to believe [M.U.].  She's a good person"). Further, in a series of recorded phone calls from county prison, Uryc offered S.U. money in an attempt to persuade S.U. and M.U. to drop the charges. N.T. 186-87, 317-24.

A jury found Uryc guilty of two counts of involuntary deviate sexual intercourse ("IDSI"), one of which was a count of IDSI with a child; one

count of incest; two counts of indecent assault; one count of corruption of minors; and two counts of felony intimidation of a witness of the victim.[3]

On August 28, 2012, the court determined that Uryc was a Sexually Violent Predator ("SVP") and imposed an aggregate sentence of 32-64 years' imprisonment. Uryc filed a timely direct appeal in which he argued that the trial court erred in refusing to suppress his post-arrest statements to police under Article I, § 9 of the Pennsylvania Constitution, and that the evidence was insufficient to sustain his IDSI conviction. On March 4, 2014, this Court affirmed Uryc's judgment of sentence. Uryc did not appeal to the Supreme Court.

On October 6, 2014, Uryc filed a timely *pro se* PCRA petition. The PCRA Court appointed counsel to represent Uryc. On November 13, 2014, Uryc's counsel filed an amended PCRA motion seeking time credit for Uryc for his period of incarceration between September 17, 2010 and his date of sentencing, August 28, 2012. On the same day, counsel moved to withdraw as counsel on the ground that the remaining issues in Uryc's PCRA petition had no merit, and that there were no other meritorious claims to raise. In support of this motion, counsel filed a "no merit" letter that he served on Uryc explaining why the PCRA petition lacked merit.

---

[3] 18 Pa.C.S. §§ 3123(a)(1) & (b),  4302, 3126(a)(7), 6301(a)(1) and 4952(a)(3), respectively.

In an order docketed on December 10, 2014, the PCRA court granted Uryc credit for time served between September 17, 2010 and August 28, 2012. On February 11, 2015, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss the remaining issues in Uryc's PCRA petition without a hearing ("Rule 907 notice"). On February 23, 2015, Uryc filed a response in opposition to the court's Rule 907 notice alleging, *inter alia*, ineffective assistance of PCRA counsel. On March 10, 2015, the court granted PCRA counsel's motion to withdraw and dismissed the PCRA petition without a hearing. The order stated that if Uryc intended to appeal the order of dismissal, he had to appeal *pro se* or with privately retained counsel. Uryc then filed a timely *pro se* appeal. Both Uryc and the PCRA court complied with Pa.R.A.P. 1925.

Although Uryc raises multiple arguments on appeal, his Statement of Questions Presented in his opening brief neglects to mention all but one argument. We will not quash Uryc's appeal on this ground, because his error does not preclude effective appellate review. **See PHH Mortg. Corp. v. Powell**, 100 A.3d 611, 615 (Pa.Super.2014) (refusing to quash appeal despite numerous violations of appellate briefing rules).

In the body of his opening brief, Uryc argues that his PCRA counsel was ineffective for failing to argue that (1) trial counsel was ineffective for failing to contend that admission of Uryc's telephone calls to his wife from prison were inadmissible under the Wiretap Act, 18 Pa.C.S. § 5701 *et seq.*; (2) trial counsel was ineffective for failing to impeach Uryc's daughter with a

police detective's paraphrased summary of her disclosures to the police; and (3) trial counsel was ineffective for failing to object to introduction of photographs of Uryc's daughter at various ages. Uryc additionally argues that (1) the Commonwealth failed to present sufficient evidence to support the finding that he is an SVP; (2) his sentence is illegal; and (3) the sentencing court failed to weigh all relevant factors in the course of determining his sentence.

Before addressing these arguments, we must determine whether PCRA counsel has satisfied the requirements for withdrawing from PCRA representation. Our Supreme Court has explained the procedure required for court-appointed counsel to withdraw from PCRA representation:

> [**Commonwealth v. Turner**, 544 A.2d 927 (Pa.1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super.1988)] establish the procedure for withdrawal of court-appointed counsel in collateral attacks on criminal convictions. Independent review of the record by competent counsel is required before withdrawal is permitted. Such independent review requires proof of:
>
> 1) A 'no-merit' letter by PCRA counsel detailing the nature and extent of his [or her] review;
>
> 2) A 'no-merit' letter by PCRA counsel listing each issue the petitioner wished to have reviewed;
>
> 3) The PCRA counsel's 'explanation', in the 'no-merit' letter, of why the petitioner's issues were meritless;
>
> 4) The PCRA court conducting its own independent review of the record; and
>
> 5) The PCRA court agreeing with counsel that the petition was meritless.

*Commonwealth v. Pitts*, 981 A.2d 875, 876 n.1 (Pa.2009). In addition, this Court has required that PCRA counsel who seeks to withdraw must:

> contemporaneously serve a copy on the petitioner of counsel's application to withdraw as counsel, and must supply the petitioner both a copy of the 'no-merit' letter and a statement advising the petitioner that, in the event the court grants the application of counsel to withdraw, he or she has the right to proceed *pro se* or with the assistance of privately retained counsel.

*Commonwealth v. Friend*, 896 A.2d 607, 614 (Pa.Super.2006). Further,

> [i]f counsel fails to satisfy the foregoing technical prerequisites of *Turner/Finley*, the court will not reach the merits of the underlying claims but, rather, will merely deny counsel's request to withdraw. *Commonwealth v. Mosteller*, 633 A.2d 615, 617 (Pa.Super.1993). Upon doing so, the court will then take appropriate steps, such as directing counsel to file a proper *Turner/Finley* request or an advocate's brief. *Commonwealth v. Karanicolas*, 836 A.2d 940, 948 (Pa.Super.2003).
>
> However, where counsel submits a petition and no-merit letter that do satisfy the technical demands of *Turner/Finley*, the court—trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief. *Mosteller*, 633 A.2d at 617. By contrast, if the claims appear to have merit, the court will deny counsel's request and grant relief, or at least instruct counsel to file an advocate's brief.

*Commonwealth v. Wrecks*, 931 A.2d 717, 721-22 (Pa.Super.2007).

Here, Uryc filed a timely *pro se* motion for PCRA relief. The court appointed PCRA counsel, who filed a motion to withdraw along with a no-merit letter, which detailed the nature and extent of counsel's review. The

no-merit letter stated that counsel reviewed Uryc's PCRA petition, the court file, the notes of testimony from his suppression hearing, trial and sentencing hearing, and that counsel did additional legal research. ***See Turner/Finley*** Letter, dated November 6, 2014. Counsel listed the issues Uryc wished to have reviewed and explained that none of them had merit except for his claim that he deserved credit for time served from September 17, 2010 through August 28, 2012. ***Id***. at 2-3. Counsel concluded that Uryc's PCRA petition was meritless, and that after conducting an independent review of the record, he determined there were no other claims of merit to present. ***Id***. at 3. Counsel served Uryc with the no merit letter. ***Id***. The PCRA court then conducted its own review and issued a Rule 907 notice thoroughly explaining that Uryc's PCRA motion was meritless.

In his no-merit letter, PCRA counsel failed to comply with the requirement to inform Uryc that in the event the PCRA court granted counsel's motion to withdraw, Uryc had the right to proceed *pro se* or with the assistance of privately retained counsel. Uryc suffered no prejudice from this omission, however, because the PCRA court advised Uryc of these options in its March 10, 2015 dismissal order. Accordingly, PCRA counsel substantially complied with ***Turner/Finley's*** requirements, and the PCRA court properly granted counsel's motion to withdraw.

We now address Uryc's claims of ineffective assistance of PCRA counsel. "To plead and prove ineffective assistance of counsel a petitioner

must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." ***Commonwealth v. Stewart***, 84 A.3d 701, 706 (Pa.Super.2013) (*en banc*). If the petitioner fails to meet any of these prongs, his claim fails. ***Id.*** Arguable merit exists when the factual statements are accurate and "could establish cause for relief." ***Id.*** at 707. Whether the "facts rise to the level of arguable merit is a legal determination." ***Id.*** In considering whether counsel acted reasonably, we look to "whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." ***Id.*** "Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." ***Id.*** Lastly, prejudice occurs where "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." ***Id.*** This probability is sufficient when it "undermines confidence in the outcome of the proceeding." ***Id.*** Counsel is presumed to have rendered constitutionally effective representation. ***See Strickland v. Washington***, 466 U.S. 668, 689 (1984).

Our standard of review is well-settled. "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." ***Commonwealth v. Fears***,

86 A.3d 795, 803 (Pa.2014) (internal quotation marks and citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa.2014) (citation omitted). "It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record." *Commonwealth v. Robinson*, 82 A.3d 998, 1013 (Pa.2013) (citation omitted). However, this Court reviews the PCRA court's legal conclusions *de novo*. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa.Super.2014) (citation omitted). Claims of PCRA counsel's ineffectiveness can be raised on appeal if the petitioner raises these claims in a timely response to the PCRA court's Rule 907 notice of intent to dismiss the PCRA petition without a hearing. *Commonwealth v. Ford*, 44 A.3d 1190, 1197-98 (Pa.Super.2012).

In this case, Uryc's three claims of ineffective assistance of PCRA counsel have all been preserved for appeal, because Uryc raised all three issues in a timely response to the PCRA court's Rule 907 notice. *Ford*, 44 A.3d at 1197-98. Moreover, Uryc raised all three claims in his Pa.R.A.P. 1925(b) statement of matters complained of on appeal.

Uryc's first claim of ineffectiveness is that PCRA counsel failed to argue that trial counsel was ineffective for failing to move to suppress tape recordings of Uryc's telephone calls to his wife from prison under the Wiretap

- 9 -

Act, 18 Pa.C.S. § 5701 *et seq.* According to Uryc, the recordings violated 18

Pa.C.S. § 5704(2)(ii)[4] because the district attorney or his designee did not

approve them in advance. Whether or not the recordings were admissible

under section 5704(2)(ii) is irrelevant, because the trial court found them

admissible under a different provision of the Wiretap Act, 18 Pa.C.S. §

_____

[4] This provision states:

> It shall not be unlawful and no prior court approval shall be required under [the Wiretap Act] for …
>
> (2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where …
>
> > (ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be initiated, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however, such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom.

18 Pa.C.S. § 5704(2)(ii).

5704(14),[5] which permits officials in county correctional facilities to intercept telephone calls from inmates. Accordingly, Uryc's first claim of ineffectiveness lacks arguable merit.[6]

_____

[5]This provision states:

> It shall not be unlawful and no prior court approval shall be required under [the Wiretap Act] for …

> (14) An investigative officer, a law enforcement officer or employees of a county correctional facility to intercept, record, monitor or divulge any telephone calls from or to an inmate in a facility under the following conditions:

> (i) The county correctional facility shall adhere to the following procedures and restrictions when intercepting, recording, monitoring or divulging any telephone calls from or to an inmate in a county correctional facility as provided for by this paragraph:

>> (A) Before the implementation of this paragraph, all inmates of the facility shall be notified in writing that, as of the effective date of this paragraph, their telephone conversations may be intercepted, recorded, monitored or divulged.

>> (B) Unless otherwise provided for in this paragraph, after intercepting or recording a telephone conversation, only the superintendent, warden or a designee of the superintendent or warden or other chief administrative official or his or her designee, or law enforcement officers shall have access to that recording.

>> (C) The contents of an intercepted and recorded telephone conversation shall be divulged only as is necessary to safeguard the orderly operation of the facility, in response to a court order or in the prosecution or investigation of any crime.

*(Footnote Continued Next Page)*

Uryc next argues that trial counsel was ineffective for failing to impeach Uryc's daughter, M.U., with a police detective's short summary of M.U.'s disclosures to the police on August 10, 2010, approximately two years before trial. In five lines of text, the detective noted that M.U. accused Uryc of touching her vagina when she was between 6-10 years old and having her perform oral sex when she was between 12 and 15 years old. The detective added that M.U. "black[ed] out" as to events between ages 10 and 12. PCRA Petition, exhibit E. M.U.'s testimony during trial was not entirely consistent with the detective's summary. M.U. testified that (1) Uryc touched her vagina when she was 5 or 6 years old; (2) she could not remember events between ages 7 and 9; (3) Uryc touched her vagina when

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> (ii) So as to safeguard the attorney-client privilege, the county correctional facility shall not intercept, record, monitor or divulge any conversation between an inmate and an attorney.
>
> (iii) Persons who are calling into a facility to speak to an inmate shall be notified that the call may be recorded or monitored.
>
> (iv) The superintendent, warden or a designee of the superintendent or warden or other chief administrative official of the county correctional system shall promulgate guidelines to implement the provisions of this paragraph for county correctional facilities.

18 Pa.C.S. § 5704(14).

[6] Although Uryc did not address the protocol followed by prison officials in intercepting his phone calls, we note for the sake of completeness that the procedures used by prison officials in intercepting the telephone calls satisfied section 5704(14). *See* N.T., 5/7/12, at 101-41, 146; N.T., 5/8/12, at 3.

she was between ages 10 and 12; and (4) Uryc began forcing her to perform oral sex at age 12. N.T. 114-19. Uryc argues that PCRA counsel was ineffective for failing to challenge trial counsel's failure to impeach M.U. by raising the inconsistency between the timelines in her trial testimony and her statement to the police.

This claim lacks arguable merit. "[A] summary of a witness' statement cannot be used for impeachment purposes absent adoption of the statement by the witness as his/her own." **Commonwealth v. Luster**, 71 A.3d 1029, 1044 (Pa.Super.2013). "The rationale for this rule is [that] [i]t would be unfair to allow a witness to be impeached on a police officer's interpretation of what was said rather than the witness' verbatim words." **Id**. Following these precepts, **Luster** held that trial counsel was not ineffective for failing to cross-examine a witness with a trooper's report of the witness' statement to police, because, *inter alia*,

> Trooper Wilson's homicide investigation report was merely a summary of the telephone conversation, was not a formal witness examination, and Trooper Wilson's record of same was not written or signed by [the witness] … Accordingly, these factors militate against any inconsistencies between Trooper Wilson's summary of his conversation with [the witness] and [the witness'] trial testimony and thus undermine Appellant's claim that trial counsel was ineffective for not cross-examining [the witness] on possible inconsistencies.

**Id**. Here, as in **Luster**, the detective's note was merely a short summary of M.U.'s report. M.U. neither wrote nor signed the note; nor is there any

indication that the note was the product of a formal witness examination. For these reasons, the detective's note could not be used to impeach M.U.

Moreover, trial counsel's failure to impeach M.U. with the detective's summary did not prejudice Uryc. Trial counsel attempted to impeach M.U. with a different inconsistency – namely, M.U. testified during trial that Uryc masturbated during oral sex but omitted this detail from her report to the police. Despite this inconsistency, the jury convicted Uryc of multiple sexual offenses. The additional impeachment testimony that Uryc claims should have been used during trial would not have changed this outcome, given the strong evidence of guilt introduced by the Commonwealth (e.g., M.U.'s testimony about Uryc's many assaults, S.U.'s testimony about hearing M.U. perform oral sex on Uryc, Uryc's admission to police that M.U. was "honest" and believable while he was a "fucked up person" who had done "fucked up things, and Uryc's phone calls to S.U. from prison offering her money in exchange for dropping the charges against him). *Cf. Commonwealth v. Carson*, 906 A.2d 220, 252-53 (Pa.2006) (defendant in murder case was not prejudiced by trial counsel's alleged failure to impeach eyewitness with evidence that she gave false statements to police on night of murder; such impeachment evidence would not have changed the outcome of trial, because counsel attempted to impeach eyewitness in other ways, most notably by accusing her of having sex with defendant for drugs and eliciting her admission that she had drug addiction).

Uryc's third claim of ineffective assistance is that PCRA counsel failed to challenge trial counsel's failure to object to introduction of photographs during trial depicting M.U. at various ages. Uryc argues that the sight of M.U. as a child might have aroused the jurors' sympathies.

As the appellant, Uryc has the duty to ensure that the record is complete for purposes of appellate review. *Cresci Construction Services, Inc. v. Martin*, 64 A.3d 254, 266 & n. 18 (Pa.Super.2013). The photographs of M.U. are not in the certified record. Thus, Uryc has waived this argument. *Id*. at 266 (Superior Court unable to review prejudgment interest issue due to appellant's failure to order trial transcript).

In his next argument, Uryc contends that the Commonwealth failed to produce sufficient evidence to sustain the trial court's determination that Uryc is an SVP. In both his Pa.R.A.P. 1925(b) statement and his opening brief, Uryc presents this claim as a straightforward challenge to the sufficiency of the evidence (as opposed to a claim that his SVP classification is the product of ineffective assistance of counsel). "The explicit language of the PCRA," however, "places an independent challenge to classification as a SVP outside the ambit of the PCRA." *Commonwealth v. Masker*, 34 A.3d 841, 842-45 (Pa.Super.2011) (*en banc*) (defendant's challenge to the process by which he was classified as SVP was not challenge to his conviction or sentence for IDSI and therefore was not cognizable under PCRA, because PCRA does not provide relief from collateral consequences of

criminal conviction); *see also Commonwealth v. Price*, 876 A.2d 988, 995

(Pa.Super.2005) (petitioner's claim that evidence was insufficient to support

his SVP classification not cognizable under PCRA). Thus, this claim does not

entitle Uryc to relief.[7]

_____

[7] Even if this claim were cognizable under the PCRA, it is devoid of merit. The question whether the evidence is sufficient to support an SVP classification presents a question of law; thus, "our standard of review is de novo and our scope of review is plenary." *Commonwealth v. Leatherby*, 116 A.3d 73, 84 (Pa.Super.2015). In reviewing such a claim, we consider the evidence in the light most favorable to the Commonwealth, which prevailed upon the issue in the trial court. *Id*.

An SVP is defined as follows:

> After a person has been convicted of an offense listed in 42 Pa.C.S. § 9799.14, the trial court then orders an assessment to be done by the [Sexual Offender Assessment Board ("SOAB")] to help determine if that person should be classified as an SVP. An SVP is defined as a person who has been convicted of a sexually violent offense … and who has a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition ... that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory. Predatory conduct is defined as an act directed at a stranger or at a person with whom a relationship has been instituted, established, maintained, or promoted, in whole or in part, in order to facilitate or support victimization. Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to re-offend, an opinion about which the

*(Footnote Continued Next Page)*

*(Footnote Continued)* ————————

> Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an 'independent element.'

***Commonwealth v. Hollingshead***, 111 A.3d 186, 189-90 (Pa.Super.2015). At the SVP hearing,

> the Commonwealth has the burden of proving by clear and convincing evidence that the person meets the criteria to be designated as an SVP. This burden of proof has been described as an intermediate test, falling below the highest level of proof, beyond a reasonable doubt, but above the preponderance of the evidence standard. Evidence will meet this level of proof if it is so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue.

***Commonwealth v. Stephens***, 74 A.3d 1034, 1038-39 (Pa.Super.2013). When performing an SVP assessment, a mental health professional must consider fifteen factors, e.g., the nature of the sexual contact with the victim, the defendant's relationship with the victim, the victim's age and mental capacity, whether the offense involved a display of unusual cruelty, the defendant's age and prior criminal record, the defendant's use of illegal drugs, and whether the defendant suffers from a mental disability, mental illness or mental abnormality. 42 Pa.C.S. § 9799.24. There is no statutory requirement that all of these factors or any particular number of them be present or absent in order to support an SVP determination. ***Commonwealth v. Prendes***, 97 A.3d 337, 358-59 (Pa.Super. 2014). An expert's opinion rendered to a reasonable degree of professional certainty is *itself* evidence for purposes of determining SVP eligibility. ***Id***. at 356.

During Uryc's SVP hearing, Dr. Robert Stein, a member of the SOAB and the Commonwealth's expert in SVP assessment, testified that Uryc engaged in a pattern of unwanted sexual contact with his biological daughter over the course of several years, including when she was prepubescent. N.T., 8/28/12, at 6-7. Dr. Stein found that Uryc engaged in unusual cruelty by forcing his crying child, M.U., to service him sexually and by ejaculating into her mouth. ***Id***. at 7. Uryc also attempted to groom his victim by plying her with illicit narcotics, and he had a history of criminal violence and substance abuse. ***Id***. at 8. Dr. Stein ultimately concluded that Uryc suffered from a mental abnormality or personality disorder and engaged in a pattern of
*(Footnote Continued Next Page)*

Next, Uryc argues that his sentence for IDSI, 14-28 years' imprisonment, is illegal because the statutory maximum is 20 years. He is incorrect. The maximum sentence for IDSI with a child is 40 years. 18 Pa.C.S. § 3123(b). Therefore, his sentence is legal.

Finally, Uryc argues that the trial court imposed an excessive sentence by failing to weigh all sentencing factors appropriately. According to Uryc, the trial court focused only upon the seriousness of his crimes in imposing sentence but ignored other relevant factors, such as his age, intelligence and work history. Uryc presents this claim as a straightforward challenge to the length of his sentence (as opposed to a claim that his sentence is the product of ineffective assistance of counsel). Requests for relief with respect to the discretionary aspects of sentence are not cognizable in PCRA proceedings. ***Commonwealth v. Wrecks***, 934 A.2d 1287, 1289 (Pa.Super.2007). Thus, this claim does not entitle Uryc to relief.[8]

_(Footnote Continued)_ ─────────

predatory behavior. ***Id***. at 10-12. Based on this evidence, the trial court found that Uryc is an SVP. Considering this evidence, and the whole of Dr. Stein's conclusions, in the light most favorable to the Commonwealth, we agree that the Commonwealth met its burden of proving by clear and convincing evidence that Uryc meets the criteria for classification as an SVP.

[8] Even if this claim were cognizable under the PCRA, it is devoid of merit, because the trial court took into consideration not only the seriousness of Uryc's crimes but also his age, intelligence, work history, ability to follow directions, criminal history, and character, as well as the presentence investigation, Uryc's statements, and counsel's arguments. N.T., 8/28/12, at 27-32 (sentencing transcript).

For all of the foregoing reasons, the PCRA court properly denied Uryc relief under the PCRA.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/10/2015