J-S07031-24

2024 PA Super 283

| E.W. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| E.N., A MINOR | : | No. 1042 MDA 2023 |

Appeal from the Order Entered June 20, 2023
In the Court of Common Pleas of York County Civil Division at No(s):
2023-SU-001259-12

BEFORE:   LAZARUS, P.J., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                    **FILED: NOVEMBER 25, 2024**

E.W. ("Appellant"), on behalf of her seven-year-old daughter, A.W., appeals from the order denying her petition for a sexual violence protection order ("SVPO") against Appellee, E.N., pursuant to the Protection of Victims of Sexual Violence or Intimidation Act ("the Act"), 42 Pa.C.S. §§ 62A01–62A20.  We affirm.

Appellant filed her petition on May 5, 2023 alleging that, on April 19, 2023, E.N., who is the same age as A.W. and was her first-grade classmate, reached down A.W.'s pants and touched A.W.'s genitals, despite the latter girl's request that E.N. stop what she was doing.  SVPO Petition, 5/5/23, at 2; **see** 42 Pa.C.S. § 62A05(a) (providing that a parent may file a petition on behalf of a minor child).  According to the petition, the incident occurred during a rehearsal for the school's spring concert at the high school and A.W. suffered

_____

[*] Retired Senior Judge assigned to the Superior Court.

a scratch on her labia majora. SVPO Petition, 5/5/23, at 2. The petition further alleged that, on the bus ride back to the elementary school, E.N. touched A.W.'s buttocks and forced A.W. to touch her own. *Id.* After an *ex parte* hearing that same day, the trial court issued a temporary SVPO prohibiting E.N., *inter alia*, from having any contact with A.W. with any violation of the order resulting in E.N.'s potential arrest for indirect criminal contempt, imprisonment for up to six months, and a fine. Temporary SVPO, 5/5/23; *see* 42 Pa.C.S. § 62A06(b) (providing that trial court may conduct an *ex parte* hearing and issue a temporary order under the Act to protect the petitioner from "an immediate and present danger").

Hearings were held on the petition before the Honorable Andrea Marceca Strong on June 2, 5, 9, and 20, 2023. At the hearings, testimony was taken from Appellant; A.W.'s father; the York County Children's Advocacy Center employee who conducted a forensic interview of A.W.; the supervisor of the nurse who conducted a "SAFE" forensic examination of A.W., who testified as an expert in forensic examination; and A.W.'s psychiatrist, who testified as an expert in child and adolescent psychiatry. The trial court also conducted an *in camera* examination of A.W.

At the conclusion of the June 20, 2023 hearing, the trial court announced its findings and its conclusion that E.W. had not met her burden under the Act. On that same date, the court entered an order denying E.W.'s petition for an SVPO against E.N. Appellant filed a timely appeal, and a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, as directed by

the trial court. The trial court then filed an opinion pursuant to Rule 1925(a) in which it expanded upon its grounds for denial of the petition.

Appellant raises the following issues on appeal:

I. Whether the trial court erred as a matter of law and/or abused its discretion in refusing to enter a protection order where Appellant presented sufficient evidence that minor A.W. was the victim of sexual violence?

II. Whether the trial court erred as a matter of law and/or abused its discretion in making findings that are not supported by the record and at times are inconsistent?

III. Whether the trial court erred as a matter of law and/or abused its discretion in holding a bias against the Appellant for the mere fact that, as a party to this action, Appellant remained in the courtroom?

IV. Whether the trial court erred as a matter of law in holding that evidence admissible pursuant to a hearsay exception would not be considered for the truth of the matter asserted?

V. Whether the trial court erred as a matter of law in finding that mailing the notice pursuant to 42 Pa.C.S.[] § 5985.1 was insufficient and did not constitute proper notice?

Appellant's Brief at 4-5 (unnecessary capitalization, suggested answers, and footnotes omitted).

Prior to addressing these appellate arguments, we must address two preliminary matters. In the first of these matters, we consider whether to strike the Appellee's brief that E.N.'s mother, N.O., who is not an attorney, filed in this Court on behalf of her daughter. Appellant filed an application to strike, which was referred to the panel deciding the merits of the appeal. Application to Strike, 12/6/23; Order, 1/10/24.

At the initial hearing on the SVPO petition, the trial court appointed a guardian *ad litem* ("GAL") to represent E.N. and continued the matter, "strongly encourag[ing]" N.O. to retain counsel for her daughter. Order, 6/2/23; N.T., 6/2/23, at 21-24; ***see*** Pa.R.Civ.P. 2031(b) ("If a minor party to an action is not represented, the court shall appoint a guardian for the minor either upon its own motion or upon [] petition[.]"); 42 Pa.C.S. § 62A06(a.1) (providing that respondent in a proceeding under the Act must be advised of her right to legal representation, but she has no right to court-appointed counsel); ***see also Varner v. Holley***, 854 A.2d 520, 523 (Pa. Super. 2004) (a minor named as a defendant in a Protection From Abuse ("PFA") Act proceeding must be represented by a guardian). After further discussion on E.N.'s need for counsel at the second hearing, the trial court appointed an attorney at N.O's expense and continued the matter a second time. N.T., 6/5/23, at 14-16; Order, 6/5/23. GAL and counsel continued to represent E.N. through the remainder of the proceeding.

After announcing its ruling denying the SVPO petition, the court vacated the appointment of E.N.'s GAL and counsel and advised N.O. that she would need to retain counsel privately for any potential appeal. N.T., 6/20/23, at 130; Order, 6/20/23. Following the filing of the notice of appeal, E.N.'s GAL and counsel filed applications to withdraw in this Court, and we entered an order denying the applications without prejudice to seek relief in the trial court. Order, 8/21/23. The trial court then entered an order confirming its vacation of GAL and counsel's appointment, determining that N.O. can

represent E.N.'s interests as her guardian, and providing that N.O. can retain private counsel at her own expense, if she so chooses. Order, 8/29/23; *see also* Pa.R.Civ.P. 2026 (providing that a guardian appointed to the represent the interest of a minor party in an action may be a GAL, "the guardian of a minor appointed by any court of competent jurisdiction," or "a person in the nature of a next friend selected to represent" the minor). As stated above, N.O. then filed an Appellee's brief on behalf of her daughter.

Our research has revealed a dearth of caselaw concerning the question of whether a non-attorney parent may represent her minor child in a court proceeding or whether a non-attorney guardian appointed by the court to represent the best interests of a minor party may appear *pro se* on behalf of the minor.[1] Nonetheless, we need not decide whether N.O. can represent her

---

[1] With very limited exceptions not applicable here, a non-attorney is prohibited from representing other parties in Pennsylvania courts as to do so would constitute the unauthorized practice of law. *Barrett v. M&B Medical Billing, Inc.*, 291 A.3d 371, 376 (Pa. Super. 2022); *Delaware Valley Landscape Stone, Inc. v. RRQ, LLC*, 284 A.3d 459, 462 (Pa. Super. 2022); *Walacavage v. Excell 2000, Inc.*, 480 A.2d 281, 284-85 (Pa. Super. 1984). This rule has been applied to bar non-attorneys from appearing in court on behalf of corporations, trusts, and estates. *See Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 389-90, 394 (Pa. 2021) (non-attorney parent, who was the administrator of her son's estate, could not bring a survival action on behalf of the estate); *Barrett*, 291 A.3d at 377 (corporate officer was prohibited from representing her employer in litigation); *Delaware Valley*, 284 A.3d at 463 (non-attorney trustees could not represent trust in legal proceeding). This Court additionally has ruled that individuals must appear through an attorney, even when the putative representative is a family member or is designated as the party's power of attorney. *See Frezghi v. Tesfamariam*, 276 A.3d 1209, 1211-13 (Pa. Super. 2022) (nephew could not represent non-English-speaking uncle in suit,
*(Footnote Continued Next Page)*

daughter in this appeal as we strike her brief based upon its lack of compliance with our appellate rules and its reliance on matters that are not part of the record. The brief consists of a two-page letter, which fails to include a summary of argument or argument section or either of the certificates of compliance required by the rules for an Appellee's brief. *See* Pa.R.A.P. 127, 2112, 2135(d). More importantly, N.O.'s argument is predominately based on excerpts of unidentified reports concerning the incidents that were not made part of the record below but which N.O. nevertheless attaches as exhibits to her brief. *See* Appellee's Brief at 1-2 (unnumbered), Exhibits 1, 4A, 4B; Pa.R.A.P. 1921, Note ("An appellate court may consider only the facts which have been duly certified in the record on appeal."); *In re S.M.*, 176

---

even though the uncle had designated the nephew as his power of attorney); *Kohlman v. Western Pennsylvania Hospital*, 652 A.2d 849, 850 (Pa. Super. 1994) (individual designated as power of attorney could not file legal action on behalf of another, notwithstanding the fact that Probate Code authorizes an attorney-in-fact to "pursue claims and litigation" on behalf of the principal).

While the question of whether a non-attorney guardian or parent may represent a child has not been answered under Pennsylvania law, we note that the overwhelming balance of cases from other jurisdictions answers this question in the negative. *See, e.g.*, *Osei-Afriyie by Osei-Afriyie v. Medical College of Pennsylvania*, 937 F.2d 876, 882 (3d Cir. 1991) (holding that "a non-lawyer appearing *pro se*, [i]s not entitled to play the role of attorney for his children in federal court"); *Estate of Snelgrove v. LeBlanc*, 311 A.3d 114, 115 (Vt. 2023) (holding that non-attorney guardian could not represent ward in court proceedings without an attorney and collecting state and federal cases with similar rulings); *Chisholm v. Rueckhaus*, 948 P.2d 707, 709 (N.M. Ct. App. 1997) ("We join an overwhelming majority of jurisdictions and hold that a non-attorney parent must be represented by counsel in bringing an action on behalf of a child.").

A.3d 927, 934 (Pa. Super. 2017) (same).  To the extent N.O. presents any argument in her letter brief beyond discussion of the non-record material, she merely relies on the trial court's ruling from the bench and its opinion.  **See** Appellee's Brief at 2, Appendix A.  In light of these substantial procedural defects, we strike the brief filed by N.O. on behalf of her daughter, E.N.  **See** Pa.R.A.P. 2101 (briefs that are not in compliance with appellate rules may be suppressed); **PHH Mortgage Corp. v. Powell**, 100 A.3d 611, 614 (Pa. Super. 2014) (striking materials in appellate brief that are not in the certified record).

We now turn to the second preliminary matter in this appeal.  In the "Preface" section of its Pa.R.A.P. 1925(a) opinion, the trial court questioned whether the Act could be applied against a seven-year-old defendant such as E.N., finding that the "Pennsylvania Juvenile Act and common law indicate[] that not only would granting the final [SVPO] be improper, but the initial granting of the temporary order was improper."[2]  Trial Court Opinion, 9/22/23, at 2-7.  The court noted that indirect criminal contempt ("ICC") was not an available remedy for any violation of the SVPO by E.N. because the Act states that an ICC charge against a minor shall be resolved in a delinquency

---

[2] E.N. raised similar arguments in her counseled motion to dismiss, wherein she sought dismissal of the petition on the grounds that the Act is unconstitutionally vague, conflicts with the Juvenile Act, and violates due process when applied against minors under ten years old.  Motion to Dismiss, 6/9/23, ¶¶8-31.  The trial court did not rule on the motion.  N.T., 6/20/23, at 116.

proceeding but a child under ten years old cannot commit a delinquent act under the Juvenile Act. *Id.* at 3 (citing 42 Pa.C.S. §§ 62A14(c), 6302). The court observed that there exists a common law rebuttable presumption that a child between the ages of seven and fourteen lacks the capacity to commit a crime, further calling into question whether the Act should be applied to children under ten. *Id.* at 3-4. The court also found no support in the Act for the relief that Appellant sought to bar E.N. from A.W.'s school through 12th grade, noting that the children's "school is not a party to the action and has no duty to A.W." and further that the school had already instituted its own safety plan. *Id.* at 5-6 (citing N.T., 6/9/23, at 82; N.T., 6/20/23, at 37-38).

We share the trial court's concerns in applying the Act against a seven-year-old defendant, as illustrated by the present case. As noted by the lower court, the Act does not set forth a viable enforcement mechanism for a defendant of that age. The principal means of enforcement of a violation of an SVPO is through ICC charges, whether initiated by law enforcement or the plaintiff. *See* 42 Pa.C.S. §§ 62A12-62A14. However, as the trial court noted, the Act provides that ICC of a minor must proceed under the Juvenile Act's delinquency procedure, 42 Pa.C.S. § 62A14(c), and that statute does not allow for a finding of delinquency of a child under ten years old. *See* 42 Pa.C.S. § 6302 (defining a "delinquent child" as being ten years of age or older); *Commonwealth v. Slocum*, 86 A.3d 272, 280 n.11 (Pa. Super. 2014) ("[A] child under ten years of age cannot commit a delinquent act as statutorily defined."). The Act also allows a plaintiff to file a petition for civil contempt,

*see* 42 Pa.C.S. § 62A15, which allows a court to impose a prison term or financial sanctions with the principal purpose of coercing the contemnor into complying with a court order. *See Gunther v. Bolus*, 853 A.2d 1014, 1016 (Pa. Super. 2004). However, we do not believe that the General Assembly intended the absurd result of permitting a court to imprison or impose a financial penalty on a seven-year-old child to coerce them into complying with an SVPO order. *See* 1 Pa.C.S. § 1922 ("In ascertaining the intention of the General Assembly in the enactment of a statute [it shall be presumed that] the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.").[3]

_____

[3] Appellant argued below that she could seek to enforce the SVPO in event of any violation by obtaining a finding of civil contempt by E.N. and then establishing the liability of E.N.'s parents under Section 5504 of the Domestic Relations Code. 23 Pa.C.S. § 5504(a) ("If a judgment has been rendered against the child in a civil action for injury because of the tortious act of the child and the judgment has not been satisfied within a period of 30 days, the injured person may petition the court for a rule to show cause why judgment should not be entered against the parent."). This argument fails because Section 5504 allows an individual to collect from a parent only in cases where there is a "judgment" against the child based upon an "injury" caused by the child's "tortious act." *Id.* By contrast, an SVPO is not a monetary judgment, does not adjudicate whether the defendant committed a tortious act, and does not require a showing of an injury but only a "risk of harm" to the protected party. 42 Pa.C.S. § 62A06(a)(2); *K.N.B. v. M.D.*, 259 A.3d 341, 348 (Pa. 2021) ("[T]he [Act] does not provide victims of sexual violence with a cause of action for tortious conduct . . . [and] does not explicitly allow for the recovery of personal or property damages.") (citation omitted).

In light of the silence of the Act on the subject,[4] the absence of adequate briefing on this issue, and our decision to affirm the denial of an SVPO in this case, however, we decline to rule as a matter of law that the Act may not be applied to any defendant under the age of ten. As the trial court observed, under the common law, the infancy defense provides a presumption that a child between the ages of seven and fourteen is incapable of forming the wrongful intent to commit a criminal act. **See Commonwealth v. Martz**, 118 A.3d 1175, 1180-81 (Pa. Super. 2015) (noting that, while the infancy defense has been abrogated in delinquency proceedings, it remains a viable defense in criminal cases not proceeding under the Juvenile Act). However, a seven-year-old such as E.N. falls within the age range, albeit at the bottom of the range, where criminal capacity can be found if evidence is presented refuting the presumption. **Id.** at 1180. Therefore, the common law presumption would not preclude a finding that a defendant between the ages of seven and nine years old could have committed the predicate sexually violent conduct that forms the basis of an SVPO, as defined in the Crimes Code.[5] **See** 42 Pa.C.S. § 62A03 (defining "sexual violence"). Furthermore,

---

[4] While there is no minimum age set forth in the Act for a defendant where an SVPO is sought, a protection order from intimidation is only available where "a person 18 years of age or older" commits conduct consistent with the offenses of harassment or stalking "against a person under 18 years of age." 42 Pa.C.S. § 62A03.

[5] We do not hold that a plaintiff bringing a petition under the Act must rebut the presumption of incapacity in cases where the defendant is between the
*(Footnote Continued Next Page)*

- 10 -

even if a child under ten years old could not be found in contempt, we cannot rule out that an SVPO prohibiting a child defendant from having contact with a victim may be beneficial to the plaintiff for some other purpose, such as in assisting school officials in determining how to handle the fallout of sexual misconduct among schoolmates. Additionally, a court entering an SVPO has discretion to tailor their relief to the age of the defendant by "[g]ranting any other appropriate relief sought by the plaintiff." 42 Pa.C.S. § 62A07(b)(2).[6]

We now turn to the issues Appellant raises in this Court. In her first two issues, Appellant argues that she presented sufficient evidence to obtain an SVPO where she showed both that A.W. was a victim of sexual violence committed by E.N. and that A.W. was at a continued risk of harm from E.N. In this appeal, "we employ the identical standard of review that we use to

_____

ages of seven and fourteen, as the trial court found that Appellant had not done in this case with respect to E.N. **See** N.T., 6/20/23, at 125-28; Trial Court Opinion, 9/22/23, at 10-11. In **Martz**, we noted that while the common-law infancy defense has been abrogated in delinquency proceedings, the defense remains viable in criminal cases not proceeding under the Juvenile Act. 118 A.3d at 1180-81. However, **Martz** arose in the context of a criminal trial against an adult based in part on conduct that occurred while he was a minor, while a strict finding of proof of criminal conduct beyond a reasonable doubt is not required for cases brought under the Act. **See E.A.M. v. A.M.D. III**, 173 A.3d 313, 318 (Pa. Super. 2017). It is sufficient for present purposes to note that the presumption of incapacity, if applied, would not entirely foreclose a finding that a seven-year-old child could commit the predicate conduct for an SVPO.

[6] We nevertheless caution trial courts, in any future cases where SVPOs are issued against defendants under the age of ten, from including language that the defendant can be charged with ICC for violating the SVPO and authorizing law enforcement to arrest the defendant without a warrant. **See** Pa.R.Civ.P. 1959 (setting forth form protection orders).

review the propriety of an order entered pursuant to the Act's seasoned counterpart addressing the protection of victims of physical or sexual abuse by family members, i.e., the" PFA Act. **Weatherholtz v. McKelvey**, 305 A.3d 103, 105-06 (Pa. Super. 2023) (quoting **E.A.M. v. A.M.D. III**, 173 A.3d 313, 316 (Pa. Super. 2017)). We therefore review the trial court's ruling to determine whether it abused its discretion or made an error of law. **E.A.M.**, 173 A.3d at 316.

When assessing the sufficiency of the evidence supporting the trial court's ruling on the SVPO petition, we review the evidence in the light most favorable to the prevailing party and grant all reasonable inferences in her favor. **Weatherholtz**, 305 A.3d at 105; **Kaur v. Singh**, 259 A.3d 505, 509 (Pa. Super. 2021). Assessing the credibility of witnesses and weight of the evidence is within the exclusive authority of the trial court as factfinder. **Weatherholtz**, 305 A.3d at 105; **Kaur**, 259 A.3d at 509.

The purpose of the Act is to provide victims of sexual violence with a civil remedy to ensure their safety and protection regardless of whether they seek criminal prosecution. 42 Pa.C.S. § 62A02(5), (6); **E.A.M.**, 173 A.3d at 317. To establish a right to relief under the Act, the plaintiff must:

> (1) assert that the plaintiff or another individual, as appropriate, is a victim of sexual violence [] committed by the defendant; and

> (2) prove by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant.

42 Pa.C.S. § 62A06(a); **K.N.B. v. M.D.**, 259 A.3d 341, 344 (Pa. 2021). "[T]he statutory framework [of the Act] neither anticipates nor requires criminal prosecution or a finding of proof beyond a reasonable doubt." **E.A.M.**, 173 A.3d at 318.

"Sexual violence" is defined under the Act as "[c]onduct constituting a crime under any of [several enumerated] provisions [of the Crimes Code] between persons who are not family or household members." 42 Pa.C.S. § 62A03. Appellant asserts that the evidence presented at the hearing showed that A.W. was the victim of the enumerated offense of aggravated indecent assault where the testimony showed that E.N. stuck her hand down A.W.'s pants while at school, refused A.W.'s directions to stop, and caused A.W. pain and an abrasion on her genitals. The offense of aggravated indecent assault prohibits an individual from "engag[ing] in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures," when done without the consent of the complaint, by forcible compulsion, or to a complainant who is under 13 years of age. 18 Pa.C.S. § 3125(a)(1), (2), (7).

In assessing the evidence presented at the hearings, the trial court accepted the timeline of events that was presented through the testimony of A.W. and her parents, as well as the experts Appellant presented. N.T., 6/20/23, at 120-21; Trial Court Opinion, 9/22/23, at 17. The court found that A.W., E.N., and the rest of their first-grade class were at the high school on

April 19, 2023, waiting to begin practicing for a spring concert that evening, when an interaction took place between the two girls that involved E.N. putting her hands down A.W.'s pants, inside of her underwear. N.T., 6/20/23, at 120-21, 126; *see* N.T., 6/9/23, at 36, 59-60, 62-63; N.T., 6/20/23, at 32, 80-82, 99. A.W. told E.N. that she wanted E.N. to stop, but E.N. continued to touch A.W.'s private parts. N.T., 6/20/23, at 120; *see* N.T., 6/9/23, at 60; N.T., 6/20/23, at 35-37, 83, 87, 99. The incident caused A.W. to feel discomfort and pain, A.W. suffered a small abrasion on her labia majora and bleeding, and another child noticed the incident and asked what was happening. N.T., 6/20/23, at 118-19, 124, 126-27; *see* N.T., 6/9/23, at 21-23, 36, 42-51, 60, 62-64; N.T., 6/20/23, at 9, 47, 78, 80-84, 87, 99, 108-09; Appellant's Exhibit 3, at 13. A second incident occurred on the bus ride back to the elementary school where the two girls exposed their own buttocks, and each touched the other girl's buttocks. N.T., 6/20/23, at 120, 124, 126; *see* N.T., 6/20/23, at 31-32, 84-88, 99.[7]

_____

[7] Appellant objects to the trial court's description of a "mutual touching" between A.W. and E.N., Appellant's Brief at 24-27; N.T., 6/20/23, at 124, but it is clear that this reference is only to the second incident on the school bus where the girls touched each other's buttocks. N.T., 6/20/23, at 124, 126; Trial Court Opinion, 9/22/23, at 34-35. The record supports the court's finding that this incident was "mutual" where A.W. agreed to touch E.N.'s buttocks and allow E.N. to touch her own willingly, albeit only because A.W. was scared of E.N. N.T., 6/20/23, at 84, 88, 99-100. The trial court specifically rejected Appellant's account that A.W. first told E.N. "no" before the buttocks touching occurred because this was contrary to A.W.'s testimony. N.T., 6/20/23, at 31; Trial Court Opinion, 9/22/23, at 34 n.29.

The trial court determined that aggravated indecent assault did not occur on these facts because there was no credible allegation that E.N. had penetrated A.W.'s vagina or anus. N.T., 6/20/23, at 119, 124-25; Trial Court Opinion, 9/22/23, at 31-33. The trial court noted that the forensic examination report, as well as the testimony of Appellant's expert on forensic examination, established that A.W.'s injury was on the exterior of her labia majora, and A.W.'s testimony was consistent with this finding. N.T., 6/20/23, at 119, 124-25; Trial Court Opinion, 9/22/23, at 31-33. To the extent Appellant's account was inconsistent, the trial court found the expert's testimony and the report controlling. N.T., 6/20/23, at 124-25; Trial Court Opinion, 9/22/23, at 32-33. The court further concluded that the second incident only involved touching of the exterior of the buttocks, with no penetration of A.W.'s anus. N.T., 6/20/23, at 124.

We discern no error in the trial court's analysis. For the purposes of the aggravated indecent assault statute, "the term 'penetration, however slight' is not limited to penetration of the vagina; entrance in the labia is sufficient." *Commonwealth v. Hunzer*, 868 A.2d 498, 505-06 (Pa. Super. 2005) (citation omitted); *see also Commonwealth v. Gilliam*, 249 A.3d 257, 269 (Pa. Super. 2021). Appellant's expert reviewed the report during her testimony, which contained a "body map" reflecting the site of the abrasion on "the exterior covering to the vulva area" at "10 to 11 o'clock on the labia majora." N.T., 6/9/23, at 21-23, 42-51; Appellant's Exhibit 3, at 13. A.W. stated that E.N. caused her pain and discomfort by "wiggling around" and

"digging in" her "private parts" but her testimony did not establish that E.N. penetrated A.W.'s labia. N.T., 6/20/23, at 80-81, 99. Only Appellant indicated that there was penetration of the labia when she testified that the abrasion was "between [A.W.'s] clitoris and the lip on the inner side, not the outer side of the lip," N.T., 6/9/23, at 64-65, but the trial court specifically discredited this testimony as it was directly contradicted to her expert and the examination report. N.T., 6/20/23, at 125; Trial Court Opinion, 9/22/23, at 15-16; **see also infra** (further discussion of trial court's grounds for finding Appellant's testimony incredible).

The record is even more clear that there was no "penetration, however slight, of the . . .anus," 18 Pa.C.S. § 3125(a), during the second incident on the school bus. According to A.W., the two girls participated in a "butt feeling contest" that involved each girl briefly touching the exterior of the other girl's bare buttock. N.T., 6/20/23, at 31-32, 84, 88, 99-100. There is no testimony that E.N. touched anywhere near A.W.'s anus during this incident.

Appellant also asserts that A.W. was a victim of sexual violence where E.N. engaged in conduct consistent with the offense of unlawful contact with a minor. **See** N.T., 6/20/23, at 123, 125 (finding that Appellant had not proved that E.N. had committed unlawful contact with a minor); Trial Court Opinion, 9/22/23, at 7-9 (same). That offense prohibits an individual from contacting a minor, or a law enforcement officer posing as a minor, "for the purpose of engaging in an activity prohibited under," as relevant here, "[a]ny of the offenses enumerated in Chapter 31 [of the Crimes Code] (relating to

sexual offenses)." 18 Pa.C.S. § 6318(a)(1). Appellant contends that the underlying prohibited activity that was the purpose of E.N.'s contact with A.W. was aggravated indecent assault because E.N.'s "conduct meets the definition of" that offense. Appellant's Brief at 23. However, the trial court found that E.N. did not commit aggravated indecent assault, a determination that we affirm in this appeal. Appellant does not argue that E.N. contacted A.W. for the purpose of engaging in aggravated indecent assault but was unsuccessful in completing that act, nor does Appellant point to any other underlying substantive offense that served as the purpose for E.N.'s contact with A.W.[8] *See Commonwealth v. Reed*, 9 A.3d 1138, 1146 (Pa. 2010) (stating that "a defendant need not be successful in completing the purpose of his communication with a minor in order to be found guilty of" unlawful contact with a minor and that the defendant need not have even been charged with the underlying substantive offense). Therefore, Appellant has provided us with no basis to overturn the trial court's finding that E.N. did not engage in unlawful contact with a minor. We therefore find no merit in Appellant's first and second claims challenging the trial court's conclusion that she did not present sufficient evidence to meet her burden for an SVPO.

In her next issue, Appellant argues that the trial court was biased against her as a result of the fact that she remained in the courtroom while

---

[8] We note that Appellant also asserted below that E.N. perpetrated indecent assault against A.W., N.T., 6/2/23, at 19-20, but she has abandoned that claim on appeal.

other potential witnesses were sequestered, even though she is a party to the action and was authorized to remain in the courtroom. *See* Pa.R.E. 615(a) (allowing trial court to "order witnesses sequestered so that they cannot learn of other witnesses' testimony" except as to, *inter alia*, "a party who is a natural person"). Upon request from E.N.'s counsel at the beginning of Appellant's presentation of her case, the trial court ordered all potential witnesses be sequestered, including Appellant. N.T., 6/9/23, at 15-16. When Appellant's counsel noted that Appellant was a party and should not be subject to a sequestration order, the trial court agreed and permitted her to stay. *Id.* at 16-17. The court added that:

> I'll take into consideration, counsel, that your client, [Appellant], is present during the testimony and take that into consideration when she provides her testimony as well. But she's not required to leave the courtroom.

*Id.* at 17-18.

Appellant maintains that this statement by the court revealed "an impermissible bias against her" when she was authorized to remain in the courtroom. Appellant's Brief at 33. Appellant contends that the court's bias was further confirmed by its findings that Appellant was both influenced by and attempting to contradict the testimony of her witnesses during her own testimony, when in fact Appellant "was merely trying to testify in her own words from her own recollection of a traumatic event." *Id.* at 35.

As a separate indicia of trial court bias against her, Appellant points to the court's statement regarding her counsel's request that E.N.'s mother,

N.O., also be sequestered. N.T., 6/9/23, at 18-19. Before directing N.O. to step out of the courtroom, the court inquired of Appellant's counsel whether she intended to call N.O., and counsel responded that she had not yet decided whether to do so. *Id.* at 19. In its opinion, the court commented on this as follows:

> We note the disingenuous request to exclude E.N.'s mother as a "potential witness," even though she was not present during the event. The request was granted because the Appellant indicated she was unsure if she would call E.N.'s [m]other as a witness. [U]pon reflection, it is clear that the Appellant had no intention to call her, and merely sought to exclude E.N.'s mother from the proceedings.

Trial Court Opinion, 9/22/23, at 14 n.14 (record citation omitted).

We have reviewed the record of the hearings and the trial court's opinion and do not find that the court held an impermissible bias against Appellant. The trial court's statement that it would "take into consideration" Appellant remaining in the courtroom, N.T., 6/9/23, at 17-18, does not show that the court prejudged Appellant's testimony as incredible but simply the court's recognition that it would evaluate her testimony based upon the entire circumstances of the case, including whether Appellant was influenced by the testimony of other witnesses. The trial court found numerous reasons to find that Appellant's testimony was not entirely credible, based upon the influence from her expert's testimony on her own and other independent reasons. *See* N.T., 6/20/23, at 121-22, 124-26; Trial Court Opinion, 9/22/23, at 15-20, 32-

33, 34 n.29.[9] These credibility findings are supported by the record, **see** N.T., 6/9/23, at 21, 23, 37-38, 42-51, 59-82; N.T., 6/20/23, at 6-50, 84, 88, 99-100, 107-08; Appellant's Exhibit 3, at 2, and we have no cause to disturb them. **Weatherholtz**, 305 A.3d at 105; **Kaur**, 259 A.3d at 509. Furthermore, we do not find fault with the trial court's comment regarding Appellant's exclusion of N.O. from the courtroom in light of the unique posture of this case involving a seven-year-old defendant facing serious allegations of sexual misconduct. It is not apparent to this Court what relevant testimony N.O. could have provided considering she was not a witness to the incidents in questions, and Appellant has not indicated what topics about which she could have possibly called N.O. to testify. Appellant's third issue thus warrants no relief.

_____

[9] The trial court found Appellant's testimony not wholly credible based upon the fact that Appellant's testimony was strongly influenced by the testimony of her forensic examination expert witness; conflicts between Appellant's testimony and that of the expert, including on issues such as the size and location of the abrasion on A.W.'s labia and whether A.W. was in physical distress during the exam; Appellant's paraphrasing of A.W. with more severe words and a more embellished account as well as Appellant's inability to remember which words were hers and which were her daughter's; Appellant's shifting tone and demeanor based upon who was examining her; her evasiveness when answering a question that might prove unfavorable to her; and Appellant's "unnecessarily inflammatory" language about E.N., including her description of E.N. as a "predator" and the unfounded concern that E.N. would bring a knife to school to harm A.W. Trial Court Opinion, 9/22/23, at 15-20, 23-24, 32, 34 n.29 (quoting N.T., 6/9/23, at 75); **see also** N.T., 6/20/23, at 121, 125-26. The court stressed that it did not find Appellant entirely incredible, as the court accepted "Appellant's general timeline of events [as] credible, just not her detailed narration of the events." Trial Court Opinion, 9/22/23, at 17; **see also** N.T., 6/20/23, at 121.

Appellant's final two issues are challenges to the trial court's evidentiary rulings. "Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present." *E.K. v. J.R.A.*, 237 A.3d 509, 522-23 (Pa. Super. 2020) (citation omitted).

In her fourth issue, Appellant argues that the trial court improperly ruled that portions of the nurse's forensic examination report reflecting Appellant's and A.W.'s statements during the forensic medical examination—specifically statements within the "narrative" on the second page of the report—would not be considered for the truth of the matter asserted. *See* Appellant's Exhibit 3, at 2. While Appellant concedes that the statements by Appellant and A.W. were hearsay, she contends that the statements were made for the purpose of medical diagnosis and therefore admissible under Pennsylvania Rule of Evidence 803(4). This rule provides an exception to the rule against hearsay for a statement that:

> (A) is made for--and is reasonably pertinent to--medical treatment or diagnosis in contemplation of treatment; and
>
> (B) describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

Pa.R.E. 803(4).

At the hearing below, Appellant introduced the forensic examination report that was completed by Nurse Tami Hartlaub following the examination of A.W. at York Hospital. Appellant's Exhibit 3. Because Nurse Hartlaub was

- 21 -

not available to testify, Appellant called her supervisor, Nurse Emily Huggins, who was certified as the hospital's custodian of records for the reports and an expert in forensic examination. N.T., 6/9/23, at 8-14. The report was admitted as a record of a regularly conducted activity under Rule of Evidence 803(6), and Nurse Huggins was permitted to testify regarding the contents of the report, including a description of Nurse Hartlaub's physical examination of A.W. *Id.* at 10, 12, 14, 21-26, 38-51. Over E.N.'s objection, Nurse Huggins was also permitted to testify regarding various statements that Appellant and A.W. made to Nurse Hartlaub reflected on page two of the report. *Id.* at 10-12, 19-20, 26-38; Appellant's Exhibit 3 at 2. While the court initially ruled that it would not accept the statements by Appellant and A.W. contained in the report for the truth of the matters asserted therein, the court ultimately allowed the admission of the complete report. N.T., 6/9/23, at 10-12, 28-35, 51-52; N.T., 6/20/23, at 4-5, 66-68, 120-21.

In its Rule 1925(a) opinion, the trial court stated that it considered the forensic examination report in full, except for two statements in the narrative that it did not accept for their truth, Appellant's statement that A.W. suffered from ADHD and A.W.'s identification of E.N. as the individual who touched her genitals. Trial Court Opinion, 9/22/23, at 35-36; *see also* N.T., 6/9/23, at 28-32 (court sustaining E.N.'s specific objections to Nurse Huggins' testimony regarding ADHD diagnosis and A.W.'s identification of E.N.). Of these two statements, Appellant challenges only the ruling with respect to A.W.'s statement that "E.N. put her hand down my pants and touched my privates

and it hurt," Appellant's Exhibit 3 at 2, arguing that the trial court abused its discretion by failing to "fully consider[]" this statement for its truth. Appellant's Brief at 40.

We agree with the trial court that the identification of E.N. as the perpetrator of the incident was inadmissible hearsay. It is well-established that a statement identifying the individual who causes the injury that leads the declarant to seek medical treatment may not be admitted under the Rule 803(4) exception. *See Commonwealth v. Smith*, 681 A.2d 1288, 1292 (Pa. 1996) (holding that a "child's identification of her abuser is not pertinent to her medical treatment or diagnosis"); *Commonwealth v. Vining*, 744 A.2d 310, 319 (Pa. Super. 1999) (*en banc*) ("While disclosing the events surrounding an injury may be important for medical treatment or diagnosis, identifying the person responsible for the injury is not medically necessary."); Pa.R.E. 803(4), Comment (noting that "statements as to fault or identification of the person inflicting harm have been held to be inadmissible" and citing *Smith*). Because Appellant sought to admit A.W.'s out-of-court statement for the purpose of identifying E.N. as the perpetrator of the unwanted touching, N.T., 6/9/23, at 30, the trial court properly found it inadmissible. *Smith*, 681 A.2d at 1292; *Vining*, 744 A.2d at 319. In any event, even if this ruling were in error, Appellant suffered no prejudice as the trial court heard identical evidence from A.W. herself, *see, e.g.*, N.T., 6/20/23, at 81-82 (A.W. testifying *in camera* that E.N. was "hurting me in my private parts"), and accepted this

account of the incident in its findings of facts. *Id.* at 117. Therefore, Appellant is not entitled to relief on this claim.

In her final issue, Appellant argues that the trial court erred by ruling that she did not give proper notice to E.N. of her intention to enter into evidence A.W.'s out-of-court statements under the Tender Years Hearsay Act ("TYHA"), 42 Pa.C.S. § 5985.1, which permits the admission of out-of-court statements by a child victim or witness relating to certain statutorily enumerated offenses, including the sexual offenses at issue in this case. 42 Pa.C.S. § 5985.1(a). The TYHA requires that the proponent notify her adversary of the intention to offer the out-of-court statement "and the particulars of the statement sufficiently in advance of the proceeding . . . to provide the adverse party with a fair opportunity to prepare to meet the statement." 42 Pa.C.S. § 5985.1(b).

Appellant contends that she effected proper service of her notice of intent to admit the TYHA statement under our civil rules by mailing a copy of the notice to E.N., who at that time was an unrepresented party, more than two weeks in advance of the initial hearing. N.T., 6/2/23, at 5-7, 11-12; Praecipe to Lodge Affidavit of Service, 7/19/23; *see also* Pa.R.Civ.P. 440(a)(2)(i), (b). On June 2, 2023, the date when the hearing was scheduled to commence, Appellant indicated that she intended to call A.W.'s psychiatrist, Dr. Christina Downing, to testify as to A.W.'s unavailability as a witness, *see* 42 Pa.C.S. § 5985.1(a.1)(2), but the trial court found notice to be insufficient and continued the hearing to June 5, 2023. N.T., 6/2/23, at 4-6, 9-10, 12,

14, 17. Appellant attempted to call Dr. Downing on June 5th, but the trial court again continued the matter to June 9th, when E.N.'s counsel conceded that notice was proper, and Dr. Downing did ultimately testify. N.T., 6/5/23, at 15-16; N.T., 6/9/23, at 97-114. Appellant contends that the "the trial court's rulings in preventing the witness from being permitted to present evidence on the first two days of the proceedings were in error and prejudiced the order of presentation of Appellant's case." Appellant's Brief at 45.

The trial court ruled that Appellant's initial THYA notice was improper based upon N.O.'s representation that the notice was not received at E.N.'s home, the fact that notice was also not received at the judicial chambers to which the notice was also allegedly sent, and further that the notice did not sufficiently identify the particulars of A.W.'s statements that Appellant sought to introduce. N.T., 6/2/23, at 6-8, 12-14; Trial Court Opinion, 9/22/23, at 29-30. Even assuming these rulings were in error, however, Appellant suffered no prejudice from the court's ruling as Appellant was able to call Dr. Downing to testify concerning A.W.'s unavailability on June 9, 2023, the first day at which Appellant was permitted to present any witnesses.[10] The

_____

[10] Appellant does not challenge the trial court's denial of her request to consider A.W.'s out-of-court statements under the TYHA on the basis that A.W. "was in fact not unavailable as a witness[] and was more than willing to communicate with the [c]ourt [during her *in camera* testimony] and very animated in doing so." N.T., 6/20/23, at 117. Notwithstanding this ruling, it appears that the court did consider all of A.W.'s out-of-court statements offered at the hearing through the testimony of Appellant, A.W.'s father, and in the forensic examination report. ***See id.*** at 120-21 (noting that the trial
*(Footnote Continued Next Page)*

continuances were not based upon the issue of whether adequate notice had been provided under the TYHA, but rather related to E.N.'s representation and the court's decision to appoint a GAL and legal counsel for E.N. N.T., 6/2/23, at 14, 17, 21; N.T., 6/5/23, at 9-14. While we sympathize with Appellant regarding the inconveniences that the two continuances caused for the presentation of her cause, we cannot fault the trial court's vigilance in insuring that E.N.'s rights to representation were safeguarded.

_____

court considered A.W.'s hearsay statements to her parents when making its findings). While the court did not consider A.W.'s identification of E.N. as the perpetrator of the unwanted touching that was captured in the forensic examination report, identical statements came in during A.W.'s *in camera* testimony. ***See supra***.

Accordingly, we conclude that none of Appellant's issues are meritorious, and we affirm the trial court's order denying an SVPO against E.N.

Order affirmed.  Appellee's brief stricken.

President Judge Lazarus joins the Opinion.

Judge Kunselman concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/25/2024